## IN THE MATTER OF FRANCIS X. ORFANELLO.

Suffolk. October 10, 1991. - January 6, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Canons of ethics, Suspension. *Judge.*

In an attorney disciplinary proceeding, this court agreed with the reasoning of the Board of Bar Overseers that the respondent attorney's admitted communication to the Boston Municipal Court judge before whom a certain criminal case was pending, even if intended only to obtain courteous treatment for another lawyer who was to appear in the case, violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5) and (6), 382 Mass. 769 (1981), as alleged in the petition for discipline before the board; where, in addition, this court inferred from the board's findings of fact that the respondent actually intended that his communication influence the judge's disposition of the case, it concluded that the respondent's suspension from the practice of law for three months would be appropriate in the circumstances. [555-558] NOLAN, J., dissenting.

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on July 16, 1991.

The case was reported by *Abrams*, J.

*Arnold R. Rosenfeld*, Bar Counsel.

*Thomas E. Dwyer, Jr.*, for the respondent.

BY THE COURT. "Well, I had a message, and I delivered the message." By that statement, made one March day in 1990, Mr. Francis X. Orfanello, executive secretary to the Administrative Justice of the Superior Court, characterized to Judge Dermot Meagher, an Associate Justice of the Municipal Court of the City of Boston, the purpose of a brief luncheon conversation that they had just had.

We recite the background and circumstances of that luncheon conversation as they appear in a stipulation of facts entered into between Orfanello and bar counsel in this bar

discipline proceeding, which a single justice has sent to the full court on a reservation and report.

In December, 1989, a physician retained Mr. George Kenneally, associate counsel to the Massachusetts Senate, to represent him on a charge pending in the Boston Municipal Court of driving under the influence of alcohol, second offense. A trial was scheduled before Judge Meagher on Friday, March 23, 1990. About one week before that date, Orfanello and Kenneally spoke on the telephone in a call Orfanello initiated. During that conversation, which principally concerned certain pending legislation, Kenneally mentioned that he represented a physician charged with driving under the influence of alcohol, second offense, in a case scheduled to come before Judge Meagher on March 23. That was the extent of their telephone conversation about the pending case.

As background to what happened next, it is important to know the following: After Judge Meagher had been nominated to the bench in February, 1989, he had asked his friend Orfanello to help in obtaining confirmation by the Executive Council. Orfanello called Kenneally who, as a favor to his friend Orfanello, spoke on behalf of Meagher to five or six members of the Executive Council. Orfanello advised the future judge of Kenneally's efforts on his behalf.

Shortly after the March, 1990, telephone conversation between Orfanello and Kenneally, Orfanello called Judge Meagher and arranged to meet him for lunch. At lunch, Orfanello told Judge Meagher that Kenneally, a supporter of Judge Meagher, had a case scheduled to come before him on March 23 in which a physician was charged with driving under the influence of alcohol, second offense. Judge Meagher said that, if he were a practicing lawyer, in a case of that type, he would get a client into a twenty-eight day program before he came to court. They said no more about the case, except that before they parted, as we have said, Orfanello said to Judge Meagher: "Well, I had a message, and I delivered the message."

On March 23 the Boston Municipal Court case was continued by agreement at the prosecution's request because a police officer witness was not present. A different judge heard the case on May 18, and found the physician not guilty.

On May 30, 1991, bar counsel filed a petition for discipline against Orfanello with the Board of Bar Overseers (board) in which he alleged the facts set forth above and stated that a private reprimand was required. The petition for discipline alleged a violation of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5) and (6), as appearing in 382 Mass. 769 (1981), which provide that "A lawyer shall not: . . . (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other conduct that adversely reflects on his fitness to practice law." Orfanello admitted the allegations, declined to be heard in mitigation, requested that the board accept the recommendation of a private reprimand, and waived his right to have the proceedings kept confidential (see S.J.C. Rule 4:01, § 20 (1), as amended, 394 Mass. 1113 [1985]). On June 10, 1991, the board rejected the recommendation of bar counsel that it administer a private reprimand but make the fact of the reprimand public.[1]

On July 1, 1991, bar counsel filed a second petition for discipline that alleged the same facts that appeared in the earlier petition, but this time he recommended a public reprimand. At the same time, bar counsel and Orfanello filed a stipulation in which Orfanello admitted the allegations of the petition, the parties waived their rights to an evidentiary hearing, and they concurred in the imposition of a public censure, agreeing that the recommended discipline took into account any evidence in mitigation that Orfanello might have chosen to present to a hearing committee. In their stipulation they further agreed that the board was not bound by their recommendation for discipline and that either party could appeal from a board recommendation of discipline other than public censure. On July 8, 1991, by a seven-to-one vote, with

---

[1] Three members of the board recused themselves. The board's vote was six to two. Two members favored accepting bar counsel's recommendation.

three members still recused, the board voted to accept the joint recommendation of a public censure.[2] The board also voted to include in the information to be filed with this court a statement of the reasons for its action.

The board did file a memorandum, and it provides new and supplemental facts not appearing in the stipulation between bar counsel and Orfanello. Orfanello has raised no objection to our consideration of these additional facts, derived mostly from sworn testimony, transcripts of which are in the record. The board pointed out that the Orfanello matter had come to its attention on referral from this court following a report to this court of a special master and commissioner who, at this court's request, had investigated certain allegations of improprieties in the Boston Municipal Court. The special master became aware of the contact between Judge Meagher and Orfanello and had recommended that the matter be investigated, citing not only DR 1-102 (A) but also S.J.C. Rule 3:07, Canon 7, DR 7-110 (B), as appearing in 382 Mass. 793 (1981). With exceptions not relevant here, DR 7-110 (B) provides that "[i]n an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending . . . ."

A portion of the board's memorandum sets forth facts that the office of bar counsel gathered from sworn testimony taken by the special master or bar counsel. Facts not set forth above include the following. Orfanello and Kenneally had been friends for more than forty years. Judge Meagher had worked in the Superior Court administrative office on a bail project as a young attorney. In the course of the telephone conversation in mid-March of 1990, Kenneally told Orfanello that he doubted that Judge Meagher even knew him. Orfanello replied, "You'll be all right" or, "He'll treat you all right." During their luncheon conversation, Orfanello told Judge Meagher that George Kenneally, a supporter of Meagher, had a case coming before him on March 23. Judge

---

[2]The dissenting member preferred greater discipline.

Meagher testified that he was taken aback by this reference.[3] Orfanello maintains that all he meant to communicate to Judge Meagher was that Kenneally, who had supported Meagher's confirmation, was going to appear before him and that Orfanello hoped Judge Meagher would recognize Kenneally. Orfanello believes that he called Kenneally after the luncheon meeting and told Kenneally that he was "all right."[4]

The board, in its memorandum, rejected the special master's allegation that Orfanello violated DR 7-110 (B) by communicating as to the merits of a pending case. The board concluded that a violation of this disciplinary rule requires some evidence of a discussion of the merits of the case or some suggestion as to disposition. There was, the board concluded, no such affirmative evidence, and therefore, bar counsel properly did not allege a violation of DR 7-110 (B) in the petition for discipline. We shall return to the question whether there is a reasonable basis for concluding that Orfanello did not attempt improperly to influence the merits of a pending case.

The board concluded that Orfanello violated DR 1-102 (A) (5) and (6). We agree with the board's reasoning that "[t]he mere fact of speaking to the judge before whom a matter was pending, outside of the course of the official proceedings, even if only to obtain courteous treatment for the lawyer, is improper. Such misconduct adversely reflects on

---

[3]In his testimony before the special master, Judge Meagher said, "I was taken back by this reference and didn't say anything for a while, and then I said — I decided I was going to not acknowledge that I knew — that I suspected what he was trying to say to me." Judge Meagher reported some of the conversation to another judge and arranged for that other judge to hear the case if it were reached for trial on March 23.

[4]According to his testimony before the special master, Kenneally has no memory of a subsequent conversation. He decided after his conversation with Orfanello that he would seek a continuance on March 23. Kenneally said that he decided to do so because, after their telephone conversation, he concluded that Orfanello might speak to Judge Meagher, "[j]ust knowing Frank." Because the Commonwealth requested a continuance on March 23, Kenneally did not need to.

the public's perception of the fairness of the judicial process and raises a serious question about the judgment of the respondent and his fitness to practice law." The board thought that Orfanello's misconduct was similar to that in *Matter of Morrissey*, 366 Mass. 11 (1974), and less egregious than that in *Matter of Ryan*, S.J.C. BD 90-15 (1990), where a district attorney's highly improper contact with a judge led a single justice of this court to impose only a public censure (although he would have imposed private censure if the matter had not already been made public). The board recognized Orfanello's long, distinguished, and otherwise unblemished career as a public servant and concluded that public censure was the appropriate discipline.

The only issue before us is the level of discipline that should be imposed. Because Orfanello was not charged with a violation of DR 7-110 (B), it would be inappropriate for us to rule that he violated that disciplinary rule.[5] We must accept the board's findings of fact, but we may draw reasonable inferences from those facts even if the board did not draw them. See *Simon v. Weymouth Agric. & Indus. Soc'y*, 389 Mass. 146, 148 (1983) (inferences from basic facts are for the appellate court); *Matter of Kipp*, 383 Mass. 869, 870 (1981) (court should draw conclusions on basis of board's findings of fact). It is in this respect that we disagree with bar counsel, the board, and Orfanello.

We reject the conclusion that Orfanello spoke to Judge Meagher solely to be certain that Judge Meagher would recognize Kenneally or to be certain that Judge Meagher treated Kenneally well, reasons that we, the board, bar counsel, and Orfanello all agree were themselves professionally irresponsible. One would have to be wearing blinders not to draw the strong and reasonable inference that Orfanello went to Judge Meagher, and said what he did, with the hope that the judge would look favorably on reaching a result beneficial to Kenneally's client. Judge Meagher seems to have so

---

[5]Of course, we could remand the matter to the board for it to consider a charge under DR 7-110 (B).

interpreted the approach. He testified that he was taken aback by the reference to the case, did not say anything for a while, and concluded that he was not going to acknowledge to Orfanello "that I suspected what he was trying to say to me." Any doubt that Orfanello intended favorable treatment for Kenneally's client is dispelled by the fact that, on leaving Judge Meagher that day, he said to the judge that he had had a message to deliver and that he had delivered it. We draw that reasonable and apparent, if not unavoidable, inference that Orfanello intended to influence the disposition of the case. We reject the view that the absence of explicit evidence of such an intent bars us from arriving at that conclusion.

It is most detrimental to the public's respect for the administration of justice for a person in the judicial system, particularly one in a position of some authority, to insinuate to a judge that a person who had once helped the judge should be given favorable treatment in any way, including in the disposition of an upcoming case. Almost twenty years ago, before our adoption of the Code of Professional Responsibility, this court made a statement in *Matter of DeSaulnier (No. 4)*, 360 Mass. 787 (1972), that remains wholly valid today: "Any attempt to tamper with a judicial disposition constitutes a vicious attack on the dispensation of even-handed justice. It does not matter whether the interference comes from a member of the bar, another judge, an elected or appointed official, or from a member of the general public. It does not matter whether it involves a traffic ticket, a probate disposition, or a felony. It was also grossly improper for such communication to have been made . . . ." *Id.* at 813.

Once one has concluded that Orfanello hoped to influence the merits of the case that was to be tried before Judge Meagher, public censure ceases to be an acceptable level of discipline, and at least some term of suspension from the practice of law must be imposed. In the circumstances, which include Orfanello's age and our recognition of his long and devoted service to the Superior Court, a suspension from the practice

of law for three months is an appropriate disposition. Judgment to that effect shall be entered in the county court.

*So ordered.*

NOLAN, J. (dissenting). Suspension from the practice of law is too harsh a sanction to impose in this case. The respondent's conduct, while undeniably improper and in contravention of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5) and (6), as appearing in 382 Mass. 769 (1981), does not approach the level of unethical behavior for which the sanction of suspension is properly reserved. In my opinion, a public censure would have addressed this situation adequately and responsibly. Indeed, the hearing committee of the Board of Bar Overseers (board) and bar counsel rejected the suggestion that the respondent's misconduct subjected him to license suspension, and they jointly recommended that this matter be concluded by a public censure — a less severe, but certainly not inconsequential or ineffective disciplinary measure. The court's rejection of the board's informed recommendation is not warranted in this case. See *Matter of Alter*, 389 Mass. 153, 157-158 (1983) (recomendations of the board and bar counsel should be accorded substantial deference on appeal).

What we consider here is an isolated instance of indiscretion in an otherwise unimpeachable forty-year devotion to the system of justice.[1] This single error, when viewed in the context of the respondent's long and distinguished career, does not qualify as a basis for suspending the respondent's license to practice law. Cf. *Matter of Saab*, 406 Mass. 315,

---

[1]The respondent's unblemished forty-year career as an attorney in this Commonwealth ought to weigh in the balance of the interests intended to be protected by this disciplinary proceeding, i.e., the effect of the sanction on the attorney and preservation of public confidence in the bar. *Matter of Alter*, 389 Mass. 153, 156 (1983). It is difficult to discern where this "important consideration" factored into today's decision to suspend the respondent from the practice of law. *Id.*

326 (1989) (long-standing and continuous pattern of unethical conduct warranted sanction of suspension from practice). To be sure, the ruling does not comport, as it should, see *Matter of the Discipline of an Attorney*, 392 Mass. 827, 834 (1984) (court should strive to ensure that the dispositions in discipline cases are not "markedly disparate"), with disciplinary measures approved or imposed by this court in past cases, most notably *Matter of Ryan*, S.J.C. BD 90-15 (1990). In *Ryan*, a single justice considered the discipline to be imposed on a district attorney for his improper ex parte communication with a judge regarding the merits of a case pending before that judge. The single justice recognized that "a single offense of this nature by a forty-year member of the Massachusetts Bar with a long and distinguished career of public service [did not merit] more than a private reprimand."[2] The instant case, in contrast, involves a less offensive ethical violation than *Ryan* (the present respondent was not found to have discussed the merits of a pending case with the judge), yet the court views it as meriting a far greater discipline. I do not agree with this "markedly disparate" treatment. *Matter of the Discipline of an Attorney*, *supra*.

---

[2]The Justice imposed a public reprimand in *Ryan*, however, since "the details of the respondent's offense and the recommended sanctions [had] already become known to the public," and the imposition of "the appropriate level of discipline" — private reprimand — would serve no realistic purpose.