In the Matter of John A. Markey.

Suffolk. June 10, 1998. - July 14, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Judge. Commission on Judicial Conduct. Constitutional Law, Judiciary.*

The appropriate discipline to be imposed on an experienced District Court judge, for his routine failure to properly engage in plea colloquies with criminal defendants and for his improper ex parte communication to a Probate Court judge intended to influence the outcome of a judicial proceeding, encompassing eight distinct violations of the canons of the Code of Judicial Conduct and the disciplinary rules of the Canons of Ethics, was a public reprimand and a suspension from his judicial responsibilities for three months without pay. [803-808]

Formal charges filed in the Supreme Judicial Court on August 18, 1997.

A hearing was held before the Commission on Judicial Conduct and a recommendation for discipline was submitted to this court.

*Michael E. Mone* (*Kathryn Hand* with him) for John A. Markey.

*Scott P. Lewis* (*Jane M. Guevremont* with him) for Commission on Judicial Conduct.

By the Court. We consider in this case what disposition should be entered after study of a report and recommendation concerning Judge John A. Markey (Judge), filed with this court by the Commission on Judicial Conduct (Commission).

Judge Markey has been a District Court judge since December, 1982, and First Justice of the New Bedford District Court since May, 1983. A complaint against Judge Markey was filed with the Commission on March 6, 1996, by Karen Macedo (Karen), and alleged that the Judge made an improper ex parte communication to Judge Prudence McGregor of the Bristol Probate and Family Court on February 26, 1996, which caused Judge McGregor to dismiss an abuse prevention order under

G. L. c. 209A (209A order) that she had issued against Mrs. Macedo's ex-husband, Nelson Macedo (Nelson), the previous day.

On June 21, 1996, the Commission sent Judge Markey a letter summarizing the allegations, and, after failing to reach an agreement with the Judge, the Commission issued a statement of allegations against him. On April 30, 1997, this court appointed special counsel to investigate the matter. On August 5, 1997, the Commission served on Judge Markey a notice of formal charges, in which the Commission advanced eight charges against him. In his conduct regarding the Macedo matter, the Commission charged Judge Markey with violating several provisions of the Code of Judicial Conduct, S.J.C. Rule 3:09, as amended, 411 Mass. 1321 (1992), specifically Canons 1, 2 (A), 2 (B), 3 (A) (4), and 3 (C) (1), as appearing in 382 Mass. 808, 809, 811 (1981). The Commission alleged that the Judge violated the canons in the following ways: Canon 1, by failing to uphold the integrity of the judiciary and failing to observe high standards of conduct so that the integrity of the judiciary may be preserved; Canon 2 (A), by failing to conduct himself in a manner that promoted public confidence in the integrity and impartiality of the judiciary; Canon 2 (B), by allowing his social and other relationships to influence his judicial conduct and judgment, and lending the prestige of his office to advance the private interests of others; Canon 3 (A) (4), by engaging in an ex parte communication with another judge designed to influence her judicial action, thereby inducing that judge to violate the canon; and Canon 3 (C) (1), by failing to disqualify himself in proceedings in which his impartiality might reasonably be questioned, including but not limited to one in which he had a personal bias favoring a party. The Commission also charged the Judge with violating the Disciplinary Rules of the Canons of Ethics, S.J.C. Rule 3:07, Canon 7, DR 7-110 (B), as appearing in 382 Mass. 793 (1981), by engaging in a private ex parte communication with another judge in an adversary proceeding as to the merits of the case.

The Commission further charged Judge Markey with violating the Code of Judicial Conduct, S.J.C. Rule 3:09, Canons 2 (A) and 3 (A) (1), as appearing in 382 Mass. 809 (1981), by failing to give criminal defendants who had offered pleas of guilty or nolo contendere or admitted to sufficient facts to permit a finding of guilt the established plea colloquy as set forth in

Mass. R. Crim. P. 12 (c), as amended, 399 Mass. 1215 (1987); G. L. c. 278, § 29D; and relevant Federal and Massachusetts case law.

On August 18, 1997, the Commission filed in this court the notice of formal charges and the Judge's answer to the charges. At the request of the Commission, we appointed a hearing officer to conduct an evidentiary hearing on the charges. After a three-day hearing, the hearing officer submitted to the Commission his findings of fact, conclusions of law, and recommendations. The hearing officer concluded that Judge Markey did not violate Canon 3 (C) (1), but did commit the seven other violations as charged. He further determined that, although the Judge "knew (or reasonably should have known) that he was giving Judge McGregor information which could influence the outcome of the [209A] hearing," his only intent in calling Judge McGregor was to advance the hearing date. The hearing officer recommended that Judge Markey be publicly reprimanded, reassigned to other District Courts for at least four months, and required to attend the National Judicial College for a minimum of three weeks of instruction at his own expense and during vacation time. Judge Markey accepted this disposition.

Special counsel filed objections to the hearing officer's report and proposed findings and recommendations. The Commission determined that the Judge had violated the canons and disciplinary rules as alleged, and, contrary to the hearing officer's determination, concluded that Judge Markey intended to influence the outcome of the hearing on the 209A order through his ex parte communication to Judge McGregor. The Commission also objected to certain factors considered by the hearing officer in mitigation. The Commission then issued to the court its report and recommendations, in which it recommended that Judge Markey be publicly reprimanded for his misconduct and suspended from his judicial responsibilities for a period of three months without pay.

The sole issue before us is the determination of the appropriate disposition to be imposed. Judge Markey does not dispute the impropriety of his conduct, nor that a sanction is warranted. He contends, however, that the severity of the sanction recommended by the Commission is unjustified, and unfair, in view of this court's precedents, and because of certain factors, among them his lack of intent to influence any aspect of the Macedo cases, and his reputation, contrition, financial situation, and

reformed conduct since the Commission's investigation. He also submits that we may not order a suspension without pay because such a sanction essentially equates to a removal, which, if imposed by the judiciary, is unconstitutional.

1. We set forth in detail the findings made by the hearing officer, and not objected to by the Commission.

a. *Ex parte communication.* On February 21, 1996, Judge Markey was scheduled to sit in the first session of the New Bedford District Court where arraignments were routinely heard, and when he arrived at the court house that morning he knew he would be presiding over all arraignments that day. As he entered the court house, the Judge was approached by Nelson, who had been arrested the previous evening and charged with assault and battery on Karen. Nelson was a janitor at the court house who had served on the New Bedford city council when Judge Markey was mayor of the city. Nelson also had lived about seven houses from Judge Markey, on the same street, for several years.

Nelson informed the Judge that he had a fight with Karen and had been arrested. He said he did not know what to do and that his attorney was unavailable. Judge Markey told Nelson that he would arrange to have an attorney file an appearance on Nelson's behalf at his arraignment. Based on this conversation, Judge Markey assumed that Nelson faced a charge of assault and battery. Judge Markey asked an attorney present in the court house if he would file an appearance and represent Nelson for his arraignment that morning, as an accommodation to the court. Later that day, Nelson was arraigned in the first session. When his case was called, Judge Markey knew it involved an assault and battery against Karen. Judge Markey also was aware that the assistant district attorney would seek an order that Nelson stay away from Karen, as was customary in domestic abuse cases. Nonetheless, Judge Markey did not recuse himself from Nelson's arraignment. At the arraignment, the prosecutor requested that the Judge issue a stay-away order against Nelson. Although Judge Markey was aware that Karen previously had received a 209A order against Nelson, he made no inquiry as to the reasons for the stay-away request or the circumstances surrounding Nelson's arrest the previous evening. Judge Markey did not respond to the prosecutor's request, and failed to rule on it, effectively denying relief.

At some time within the following two days, Judge Markey

went to his house at 65 Cottage Street to retrieve the mail.[1] While in front of his house, Judge Markey was approached by Nelson who asked the Judge to accompany him to his home at 31 Cottage Street to observe the condition of the Macedos' apartment. Judge Markey then walked to 31 Cottage Street with Nelson. While there, Nelson told Judge Markey that Karen had moved out, taken everything, and left the apartment a mess.

On February 26, 1996, Nelson went to Judge Markey's lobby and told the Judge that he had been served with a temporary 209A order issued by the Bristol Probate and Family Court which forbade him from his home at 31 Cottage Street. A hearing on the order was scheduled for March 8, 1996. Nelson asked Judge Markey what he should do, and the Judge responded that he should call his lawyer and have him advance the case. Nelson told Judge Markey that he could not call his lawyer because he had not yet paid his lawyer for representing him in the Macedos' divorce proceedings. Judge Markey told Nelson that he would call the Probate and Family Court himself to have the case advanced.

Following his discussion with Nelson, Judge Markey called the Probate and Family Court, and his call was forwarded to Judge McGregor, the judge who had issued the 209A order. Judge Markey identified himself and asked Judge McGregor to advance the case, essentially as a favor to him. In particular, Judge Markey stated, "There [is] a case that I would ask that [you] advance. I would appreciate it if [you] would advance it, Macedo versus Macedo." Judge Markey also told Judge McGregor that, as a result of the 209A order, Nelson was forced out of his home, and that Karen was not living there. Judge Markey told Judge McGregor that he knew Karen was not living there because he had gone to the Macedos' apartment and had seen that all the furniture was gone. As a result of this telephone conversation, Judge McGregor advanced the hearing date to February 27, 1996, the day following Judge Markey's call.

At the hearing, Judge McGregor told the Macedos that she had received a call the previous afternoon from a judge of the District Court who informed her that he had gone to the property and that there was nothing in the house that Karen needed to remove. Judge McGregor asked Karen:

---

[1]At that time, Judge Markey no longer lived at the Cottage Street address, although he continued to own the property.

> "Tell me why, ma'am, that you can conceivably think that there [is] a judge of the district court that tells me there's nothing in there for you to take and that you're telling me there [is] children's stuff and stuff that you need as well as the dishwasher and stove."

Judge McGregor further stated:

> "I am loathe to have a judge from the district court call and tell me that there is nothing in that property and you tell me that there is."

Judge McGregor stated that she found Karen's testimony "not credible," and dismissed the 209A order.

Later that day, Karen's lawyer filed a motion to recuse Judge McGregor from any further proceedings between the parties, based on Judge McGregor's ex parte communication with Judge Markey. At a hearing held on the motion, Judge McGregor admitted that her decision regarding the restraining order had been influenced by her conversation with Judge Markey:

> "Counsel, I will tell you that I did indeed receive an ex parte communication from Judge Markey; that I disclosed that on the record; that I completely and absolutely asked your client why Judge Markey was telling me that he had gone to the premises and there was nothing at all there to be taken out. . . . And yes, counsel, that is part of what my decision concluded. So that if you would like another judge to hear this matter, that is fine with me, counsel."

On March 19, 1996, Nelson filed a cross complaint against Karen in the New Bedford District Court. Judge Markey presided at Karen's arraignment on April 18, 1996, and her pretrial conference on May 30, 1996. Karen did not object to Judge Markey's presiding at either her arraignment or pretrial conference.

b. *Failure to engage in plea colloquies.* Judge Markey was aware that under Mass. R. Crim. P. 12, and as a matter of constitutional law under both the United States and Massachusetts Constitutions, he was required to engage in an established plea colloquy with criminal defendants who were pleading guilty or nolo contendere or admitting to sufficient facts to permit a finding of guilt. Judge Markey knew that, as part of this required colloquy, he was obligated to inform a defendant of the rights he or she was waiving, and determine on

the record whether the defendant's waiver of those rights was made knowingly and voluntarily. Judge Markey knew that the law required him to determine that there was an appropriate factual basis for a charge before accepting a plea or admission. Judge Markey also knew that the law required him to inform a defendant that his or her plea of guilty or admission to sufficient facts could have an impact on his or her possible deportation, naturalization, or ability to remain in the United States.

Although Judge Markey knew of the legal requirements regarding plea colloquies, in the years immediately preceding 1996 (when the Commission notified him that his failure to engage in the colloquies was a violation of Canons 2 [A] and 3 [A] [1]), Judge Markey routinely failed properly to advise defendants.[2]

2. The Commission's objections to the hearing officer's report and recommendations are based on its conclusion that Judge Markey intended to influence the outcome of the 209A hearing when he communicated ex parte with Judge McGregor. This determination is also central to the Commission's recommended disposition. The Judge has contended from the inception of the Commission's investigation that he did not intend to influence the 209A proceedings.

The Commission relied on the hearing officer's findings, as well as Judge Markey's testimony, in reaching its conclusion as to Judge Markey's intent. Judge Markey testified that when he called the Probate and Family Court, he understood 31 Cottage Street to be Nelson's residence. In addition, he knew that Nelson had been served with a 209A order that forbade him from going to that address until March 8, 1996, when the matter would be heard. He presumed that the Probate and Family Court had issued an order forbidding Nelson from going to 31 Cottage Street because the court viewed it as the residence of Karen, and, from having gone to the residence only days before, he thought that Karen was no longer living there. He also presumed that, when Judge McGregor learned that Karen did not live at 31 Cottage Street, she would vacate that part of the 209A order which forbade Nelson from going to 31 Cottage Street.

Judge Markey also testified about his own experience in rul-

---

[2]For example, records from the New Bedford District Court indicate that during the week of June 10, 1996, through June 14, 1996, Judge Markey failed to engage in a plea colloquy in thirty-one cases in which he was required to do so.

ing on 209A applications. He testified that he considers whether the defendant will be forced out of his residence as a result of the order, and whether the plaintiff resides at the residence from which the defendant would be barred. In addition, Judge Markey stated his belief that any judge who learned that the plaintiff was not living at the address from which the defendant had been barred would more than likely vacate an order barring the defendant from that address.

The Judge's testimony, in combination with the hearing officer's findings, supports the conclusion that the expected consequence of Judge Markey's ex parte communication to Judge McGregor was that she would vacate or alter the 209A order. In fact, the inference drawn by the Commission regarding Judge Markey's intent was manifestly justified by the evidence. "One would have to be wearing blinders not to draw the strong and reasonable inference" that the ex parte communication was intended to influence the outcome of a judicial proceeding. *Matter of Orfanello*, 411 Mass. 551, 556 (1992).

Judge Markey argues that the Commission's proposed discipline, that he be suspended without pay for a period of three months, would constitute a de facto removal from office prohibited by art. 30 of the Declaration of Rights to the Massachusetts Constitution. A temporary suspension without pay would not remove Judge Markey from his judgeship or create a vacancy in his office triggering the Governor's appointment authority. The Commission has been authorized by the Legislature, pursuant to G. L. c. 211C, § 8 (4), to recommend to this court various sanctions, including "removal," the "imposition of limitations or conditions on the performance of judicial duties," the "imposition of a fine," and the "imposition of any other sanction which is reasonable and lawful." The Commission's recommendation that Judge Markey be suspended without pay for a period of three months is fully consistent with its statutory authority. In addition, we have concluded on previous occasions that a temporary suspension does not constitute a removal. See *The Governor* v. *McGonigle*, 418 Mass. 558, 560-561 (1994) (sheriff not removed from office where his temporary suspension did not create vacancy in the office); *Tobin* v. *Sheriff of Suffolk County*, 377 Mass. 212, 214 (1979) (chief deputy sheriff's suspension without pay by sheriff not tantamount to removal from office); *O'Hara* v. *Commissioner of Pub. Safety*, 367 Mass. 376, 381 (1975) (suspension of State trooper without

pay pending a hearing is not discharge or removal). Judge Markey's reliance on *Matter of Bonin*, 375 Mass. 680, 711 (1978), for the proposition that a suspension without pay is constitutionally impermissible does not advance his argument.[3]

3. Mitigating facts found by the hearing officer include that Judge Markey has been a District Court judge for many years and has established a reputation for honesty and integrity, and for being a hard-working, fair, and compassionate judge, who is respected by other judges and the New Bedford community. At the time Nelson initially approached him, Judge Markey was under some degree of personal stress resulting from family health issues. Furthermore, the Judge's misconduct was not prompted by any motivation other than concern and compassion for "a member of the courthouse family." Judge Markey has corrected his practice with regard to plea colloquies, and the proceedings around the Commission's charges have raised his consciousness with regard to the impropriety of his ex parte telephone call to Judge McGregor.[4]

Nonetheless, despite the overwhelming evidence to the contrary, Judge Markey continues to deny that he intended to influence Judge McGregor's decision on the 209A order. He also contends that his misconduct was less serious than that of other judges who have avoided suspensions, and that this court has never imposed the sanction of involuntary suspension

[3]In *Matter of Bonin*, 375 Mass. 680, 683 (1978), this court entered an order temporarily enjoining Robert Bonin, who was then Chief Justice of the Superior Court, from the performance of all judicial and administrative functions during the pendency of this court's proceedings. At the conclusion of the proceedings, the court extended his suspension "for a reasonable time to permit the executive and legislative branches to consider . . . the question of the continuance of the Chief Justice in office." *Id.* at 711-712. Thus, a distinction was drawn in that case between temporary suspension of a judge from his duties, which is appropriate for the court to impose, and a removal of the judge from office, which is the prerogative of the Executive and Legislature. The fact that the Commission's recommendation that Judge Markey's suspension be without pay does not alter this conclusion.

We reject Judge Markey's claim that adoption of the Commission's recommendation would deprive him of the ability to work in any capacity. He concedes that the Code of Judicial Conduct, S.J.C. Rule 3:09, Canon 4 (A), as appearing in 382 Mass. 814 (1981), permits a judge to "speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice."

[4]We agree with the Commission that the hearing officer should not have considered Judge Markey's personal financial resources in mitigation.

without pay on a judge. However, none of the previous disposi-
tions he relies on involved the misconduct at issue here: the
making of an ex parte communication to another judge designed
to influence the outcome of a pending case. Cf. *Matter of Brown*,
427 Mass. 146 (1998); *Matter of King*, 409 Mass. 590 (1991);
*Matter of Killam*, 388 Mass. 619 (1983); *Matter of Scott*, 377
Mass. 364 (1979); *Matter of Bonin, supra*.

Furthermore, contrary to Judge Markey's contention, the
charges against him involve substantially more than creating an
appearance of partiality. Judge Markey affirmatively undertook,
through a private ex parte communication, to intercede on behalf
of one party in a judicial proceeding. He asks us to view his
involvement in the Macedo matter as "a single deviation from
his usual practice of recusing himself on cases in which he had
personal contacts with the parties." We conclude that Judge
Markey's misconduct did not consist of an "isolated instance of
aberrant behavior," *Matter of Killam, supra* at 624, but rather
included a "wide variety of improprieties" in connection with
the Macedo matter. See *Matter of Larkin*, 368 Mass. 87, 91
(1975). He not only failed to recuse himself from proceedings
involving the Macedos on three separate occasions, but he also
acted as an advocate on behalf of Nelson, obtaining a lawyer
for him, viewing the Macedos' home at Nelson's request, call-
ing the Probate Court on behalf of Nelson to advance the 209A
hearing, and providing Judge McGregor with ex parte testimony
on an issue he recognized to be critical to Judge McGregor's
decision. Furthermore, at Nelson's arraignment, Judge Markey
denied the prosecutor's stay-away request without disclosing
that he had spoken to the defendant about the events leading up
to his arrest.

"Once one has concluded that [Judge Markey] hoped to influ-
ence the merits of the case . . . public censure ceases to be an
acceptable level of discipline, and at least some term of suspen-
sion . . . must be imposed." *Matter of Orfanello, supra* at 557.
As we said in *Matter of Orfanello*:

> "Any attempt to tamper with a judicial disposition
> constitutes a vicious attack on the dispensation of even-
> handed justice. It does not matter whether the interference
> comes from a member of the bar, another judge, an elected
> or appointed official, or from a member of the general
> public. It does not matter whether it involves a traffic

ticket, a probate disposition, or a felony. It was . . . grossly improper for such communication to have been made . . . ."

*Id.* at 557, quoting *Matter of DeSaulnier (No. 4)*, 360 Mass. 787, 813 (1972).

We reject Judge Markey's argument that the disposition against Judge McGregor should not be considered in determining an appropriate sanction for his misconduct.[5] The sanction imposed on Judge McGregor is relevant as both judges were involved in the misconduct, and Judge Markey's transgressions were substantially more serious than those of Judge McGregor. He initiated the ex parte communication with her, asked her to advance the hearing date as a favor to him, volunteered his personal observations with respect to the condition of the Macedos' apartment, and sought to influence her decision on the 209A order.

Judge Markey was an experienced judge, having been in the District Court for more than thirteen years, as compared to Judge McGregor, who had been a judge for less than three years when the incident occurred. Moreover, Judge Markey's other acts of misconduct on behalf of Nelson created an appearance of "impropriety, bias, and special influence." *Matter of Bonin, supra* at 711. As First Justice of the New Bedford District Court, it is incumbent on Judge Markey to set an example for other District Court judges to follow, whether in his court or in another court, and to "be sensitive to the impression which his conduct creates in the minds of the public." *Id.*

Compounding his misconduct in the Macedo matter is the Judge's pattern of conduct with regard to plea colloquies, whereby he exhibited a wilful disregard of the law and not merely an error of law. See *Matter of King, supra* at 608; *Matter of Troy*, 364 Mass. 15, 40 (1973). Judge Markey engaged in a "pattern[] of disregard or indifference" which, leaving aside the charges related to his involvement in the Macedo matter, alone warrants discipline. *Matter of Scott, supra* at 367.

---

[5]The Commission determined that Judge McGregor violated the Code of Judicial Conduct by permitting a private communication designed to influence her judicial action, and by permitting that communication to influence her judicial action. Judge McGregor agreed to a six-week suspension without pay and a two-week education program during her vacation time and at her own expense.

Although, as Judge Markey states, his "practice promptly and conclusively reformed immediately upon his being advised that his deviations from protocol constituted violations of the Code and Canons," nowhere does he recognize that those "deviations" also deprived numerous defendants of a substantial constitutional right. As the hearing officer concluded, despite the fact that, in each known instance where Judge Markey failed to give the required colloquy the defendant was represented by counsel and was not sentenced to jail time, "[n]either these facts, nor the additional facts of the [c]ourt's heavy caseload and the time necessary to give a full plea colloquy, excuse in any respect the failure to do so."

4. We have carefully considered the charges and evidence against the Judge, and we have concluded that the Commission has established eight distinct charges and violations of the canons of the Code of Judicial Conduct, and the disciplinary rules of the Canons of Ethics. Against these conclusions, we have weighed mitigating and aggravating factors, and considered the recommendations of the Commission. Judge Markey has been, overall, a conscientious judge who has endeavored in a high volume court to do justice in the myriad cases that have been brought before him. His misconduct with respect to the Macedo matter, however, is most serious, and no amount of good behavior can negate the damage it inflicts on the judicial system which depends for its institutional independence on the bedrock principle that all disputes coming before a judge should be decided solely on their merits, openly presented, without extraneous influences. This principle has been violated. We agree with the disposition recommended by the Commission, and we direct that Judge Markey be publicly reprimanded for his misconduct and suspended from his judicial responsibilities for three months without pay.[6]

*So ordered.*

---

[6]We reject Judge Markey's argument that the sanction urged by the Commission is effectively a monetary sanction not warranted by the facts, and that, because he did not personally gain from his misconduct, he should not suffer a financial penalty. We acknowledged in *Matter of King*, 409 Mass. 590, 611 (1991), that a monetary sanction may be appropriate in circumstances other than where a judge receives some personal benefit from his misconduct.