**In re Alexander ZENO.**

**No. 07–23 (JAF).**

United States District Court,
D. Puerto Rico.

June 4, 2007.

Alexander Zeno, Washington, DC, pro se.

## OPINION AND ORDER [1]

JOSÉ ANTONIO FUSTÉ, Chief Judge.

### I.

This proceeding involves two separate disciplinary referrals against Attorney Alexander Zeno. The first was filed on February 2, 2007, by United States District Judge Carmen C. Cerezo, and the second was filed on February 5, 2007, by United States District Judge Daniel R. Domínguez. Both request that this court discipline Zeno various instances of misbehavior.

Judge Cerezo's disciplinary complaint states that Zeno, who was appearing before her as the Criminal Justice Act (CJA) appointed counsel for an indigent defendant, reacted improperly when she asked him to provide additional billing detail on a CJA voucher he had recently submitted to her for review. *See Crim. No. 05–133, Docket Document No. 366, at 1.* In particular, Judge Cerezo questioned the fact that Zeno responded by (1) informing her that he would complain to the First Circuit about what he viewed as Judge Cerezo's abuse of discretion in requesting more detail; (2) announcing that, "as far as he was concerned," the revised voucher he then submitted in response to Judge Cerezo's request "fully compl[ied] with this Court's requirements and [was] specific enough;" and (3) criticizing this court's general administration of the CJA and, more specifically, chiding Judge Cerezo for delaying his CJA payment in the case at issue when

---

1. Before Fusté, Chief Judge, and García-Gregory, Delgado-Colón, Gelpí, and Besosa, District Judges.

he had bills to pay, and by proudly stating that he is "not afraid of expressing what he feels." *Id.* at 3. Troubled at what she perceived to be Zeno's threat to complain about her to the First Circuit if she did not approve his CJA voucher, Judge Cerezo recused herself from further consideration of the CJA payment issue, *Crim. No. 05–133, Docket Document No. 367,* and filed the instant request that the undersigned subject Zeno to disciplinary review. *Misc. No. 07–23.*

Judge Domínguez' complaint refers to an incident in which Zeno, who was also appearing before him as CJA-appointed counsel at the time, moved for the dismissal of his client's case under the Speedy Trial Act and the Sixth Amendment of the United States Constitution, without including any legal arguments or citations warranting the position. *Crim. No. 06–111, Docket Document No. 76–1.* Judge Domínguez conducted a full analysis of the speedy trial issues anyway and, in denying the motion, he alluded to the "skeletal" nature of Zeno's legal writing. *Crim. No. 06–111, Docket Document No. 85, at 10.* Dissatisfied that Judge Domínguez had denied the motion, Zeno filed a reconsideration motion in which he insulted Judge Domínguez by explaining that his original motion had been so simple because "there [was] no need to explain the obvious." *Crim. No. 06–111, Docket Document No. 94.* Later, and after a status conference in which he felt that a co-defendant's counsel had been rude to him, Zeno filed an infor-

mative motion with Judge Domínguez on November 5, 2006, in which he repeatedly called the co-defendant's counsel unethical and unprofessional, took Judge Domínguez to task for not having stepped in to defend him from this person, and, finally, baldly accused Judge Domínguez of having a pro-government bias. *Crim. No. 06–111, Docket Document No. 96.* Zeno then announced that "this is not the first time that [he] has complained to this Court as to its behavior and apparent mockery of [his positions]." *Id.* at 2.

On February 16, 2007, in response to Judge Cerezo's and Judge Domínguez' complaints, we ordered Zeno to show cause as to why disciplinary measures ranging from admonishment to suspension to disbarment should not be adopted in reference to his federal bar membership status for the aforementioned incidents. We told Zeno to "focus his efforts on the allegations relating to Judge Cerezo's and Judge Domínguez' complaints."[2] Given his tendency to draw conclusions without offering specific legal argument and citation to support them, we took great pains to inform Zeno what we wanted to see in his response to our order to show cause, which was that he should carefully apply Rules 3.5(a) and 3.5(d) of the ABA Model Rules of Professional Conduct to the facts of the allegations leveled against him. We explicitly instructed Zeno "to include case law, and a discussion of that case law, to bolster any arguments he makes" under

2. In addition to ordering Zeno to respond to Judge Cerezo's and Judge Domínguez' complaints in this document, we also chose to take the opportunity to write in detail about other instances, of which there are many, where Zeno had behaved questionably before various members of this court. Our order to show cause made clear, however, that we did not suddenly expect Zeno to answer for the numerous improprieties that he had logged over the years. Rather, our aim in listing Zeno's many instances of misbehavior was meant simply to communicate to him that we take investigating Judge Cerezo's and Judge Domínguez' complaints seriously, and that he should, too, because they are only the most recent examples of his chronically questionable conduct before various members of this court. *See* Order to Show Cause, filed February 16, 2007, *Docket Document No. 1.*

those rules.[3]

On March 22, 2007, however, Zeno largely ignored our meticulous instructions and filed a six-page response to our Order to Show Cause[4] in which he cited to only one case and barely mentioned the Model Rules. And so, unfortunately, we are left to undertake Zeno's disciplinary review without much input from Zeno himself. As we see it, there are two primary issues of disciplinary review in this proceeding, which are (1) Judge Cerezo's view that Zeno threatened her when he announced he would complain to the First Circuit about her request for a more detailed CJA petition, and (2) Judge Cerezo's and Judge Domínguez' complaints that Zeno addressed them disrespectfully. We shall take each of these two allegations in turn.

## A. Announcement of First Circuit Complaint and Model Rule 3.4(a)

Judge Cerezo complains that Zeno, in resubmitting his CJA voucher in a more detailed fashion, informed her that he was submitting a complaint to the First Circuit for what he perceived as her abuse of discretion ("the First Circuit complaint"). *Misc. No. 07–23, Docket Document No. 1* (citing *Crim. No. 05–133, Docket Document No. 1*). Rightly so, Judge Cerezo took Zeno's announcement of a First Circuit misconduct complaint to be an attempt to pressure her into approving his CJA voucher without any further questions, and so she recused herself. *Crim. No. 05–133, Docket Document No. 367.*

Model Rule 3.5(a) of the ABA Model Rules of Professional Responsibility provides that "[a] lawyer shall not seek to influence a judge, juror, prospective juror or other official by means prohibited by law." Model Rules of Prof'l Conduct R. 3.5(a)(5th Ed.2004). Judge Cerezo avers that Zeno's announcement of his intent to file some sort of complaint before the First Circuit during the pendency of her consideration of his CJA petition made her feel "threatened and intimidated to a point that led to [her] *sua sponte* recusal regarding the voucher matter." *Misc. No. 07–23, Docket Document No. 1.*

Unforeseeably, the ABA's annotation to Rule 3.5(a), however, does not specifically address this sort of scenario, most probably because Zeno's chosen vehicle, the complaint before the Circuit Court of Appeals, appears to be sui generis and unusually exceptional. Instead, the Rule 3.5(a) annotation limits its discussion to typical, common cases where lawyers have been found to have impermissibly given gifts, loans or campaign contributions to a judge with the intent to influence her. Model Rules of Prof'l Conduct R. 3.5(a) annotation (Gifts, Loans, and Contributions; Judicial Awards and Honors) (citing *In re Alexander*, 146 Ill.2d 83, 165 Ill.Dec. 674, 585 N.E.2d 70 (1991) (finding an ethical violation where lawyer lent money to a judge and then accepted a guardian at litem appointment from him); Me. Ethics Op. 161 (1998) (stating that lawyers may not make or solicit contributions to support national center that provided educational programs for state and federal judges, even though gifts from any one particular lawyer would be so attenuated in relation to the benefits received by

---

3. We made this explicit instruction because, based on Zeno's prior submissions to the court, he has a tendency to rely on conclusory allegations without much legal or factual support.

4. Zeno has actually styled the document he filed as a "Memorandum in Support of Answer to Complaints." *Misc. No. 07–23, Docket Document No. 4.* We will treat it as a response to our order to show cause, though, to avoid simply leveling sanctions against him for defaulting on the order to show cause.

judge as to be insignificant); *In re Orfanello*, 411 Mass. 551, 583 N.E.2d 1277 (1992) (finding that ex-parte contact with judge informing him that a supporter of his judicial nomination has a case scheduled to come before him is prohibited)).

Just because Zeno's announcement to Judge Cerezo of the First Circuit complaint does not appear in the typical laundry list of violations in the annotation to Rule 3.5(a) does not, however, necessarily mean that we cannot find the "complaint" announcement to be a violation. An ABA comment to Rule 3.5(a) is instructive in this regard. It reads that in interpreting the rule, courts should look to "improper influence ... proscribed by criminal law," Model Rules of Prof'l Conduct, R. 3.5(a) cmt. [1] (2004), and, to that end, Judge Cerezo suggests that Zeno's behavior may have violated federal law, 18 U.S.C. § 1503(a) (2000 & Supp.2005), which states in relevant part that:

> [w]hoever ... by any threatening letter or communication, endeavors to influence, intimidate, or impede any ... officer in or of any court of the United States ... in the discharge of his duty ... or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

18 U.S.C. § 1503(a).

In his defense, Zeno points out that the precise language of the "threat" was that he "will be filing a complaint with the First Circuit Court of Appeals for the abuse of discretion of this Court as to this matter." *Misc. No. 07–23, Docket Document No. 4* (citing *Crim. No. 05–0133, Docket Document No. 366*). The statement in question,

according to Zeno, was not meant to *threaten* Judge Cerezo, but rather simply to provide her with notice of what he planned to do, which he then actually did.[5] Zeno claims that the First Circuit complaint was not explicitly presented as a conditional event that would occur if Judge Cerezo did not immediately do as Zeno wished.

█ Zeno's announcement of the First Circuit complaint is a veiled threat. We find that Zeno's presentation of the announcement is not as innocuous as he claims. Attorneys across the country do not routinely file similar letter complaints every day when they disagree with a judge's rulings. In cases of disagreement, notices of appeal are usually filed as extremely matter-of-fact, separate, case docket entries. Zeno, by contrast, chose to tell Judge Cerezo that he would complain about her to the First Circuit in the context of a motion that simultaneously demanded that she quit giving him a hard time and grant his requested relief without further delay. Zeno's behavior does, as Judge Cerezo suggests, imply a manipulative intent that violates Rule 3.5(a).

However, it is unnecessary for us to conduct an 18 U.S.C. § 1503(a) analysis in order to impose sanctions today. Zeno already clearly merits sanctions under Rule 3.5(d) for the disrespectful conduct disruptive of the judicial process of which he stands accused by Judge Cerezo and Judge Domínguez, and so we shall proceed to that inquiry forthwith.

### B. *Disrespectful Submissions to the Court and Model Rule 3.4(d)*

Judge Cerezo and Judge Domínguez both allege that Zeno addressed them dis-

---

**5.** Zeno complained by letter to the Court of Appeals. The Circuit Executive's office responded and instructed him that the proper procedural vehicle was not a letter complaint, but a judicial misconduct complaint.

respectfully when appearing before them, and ask the undersigned to impose professional misconduct sanctions against Zeno for this misconduct. In response to Judge Cerezo's and Judge Domínguez' complaints, Zeno retorts that they:

> **seem[ ] to [exhibit] ... nothing more than [their] dissatisfaction ... with [Zeno] for complaining against their respective abuses of discretion ....** [W]hat is missing from their respective complaints is how and when did [his] remarks in any way strayed [sic] from the truth or from the way that an attorney who respects the system of law should behave.

*Misc. No. 07–23, Docket Document No. 4* (emphasis in original). Zeno clearly misses the point. In making this statement, he purports not to understand why he is being accused of addressing Judge Cerezo and Judge Domínguez disrespectfully, and asks how else, other than by calling them liars and lazy people,[6] can he "respect[ ] the system of law" and appropriately challenge what he believes to be an incorrect ruling. The answer is certainly not, as Zeno's rhetorical question might suggest, stubbornness, sarcasm, and disrespect.

Model Rule 3.5(d) provides that "[a] lawyer shall not engage in conduct intended to disrupt a tribunal." Model Rules of Prof'l Conduct R. 3.5. Comments accompanying the rule elaborate on the policy behind it, which is that

[t]he advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.

Model Rules of Prof'l Conduct, R.3.5 cmt. [4].

Herein lies the answer to Zeno's rhetorical question, which is that lawyers preserve issues regarding judicial error or misconduct for appeal or other review [7] by voicing their objections with "patient firmness" on the record. *Id.* In announcing his intentions to complain about Judge Cerezo's ruling to the First Circuit, Zeno has already shown that he knows this, which begs the question as to why he would then proceed to brusquely

> [r]emind [her] that the payment requested is the money that the undersigned, just like anybody else, uses to pay his rent, his car, his utilities, his *student loan*, his food, and his *taxes* ... All of the following persons involved in this case were already paid for their services: the marshals, the personnel of the Bureau of Prisons, the clerk's office,

---

6. Zeno complained to Judge Cerezo that he wanted an explanation from her as to "why it took this Court so long." *Crim. No. 05–133, Docket Document No. 366.* Zeno later suggested to the undersigned that Judge Domínguez' denials that he had ever treated Zeno poorly were lies: *"The fact that the Judge denied that he laughed at our positions does not make his denials true.* Judges, like anyone else, also lie, sometimes from the bench."

*Misc. No. 07–23, Docket Document No. 4* (emphasis in original).

7. In addition to using the normal appeals process to correct a judicial ruling that an attorney thinks is wrong, he or she can raise allegations of judicial misconduct for review by the First Circuit through a formal process offered by the court, the details of which can be found on its web site. *See* www.ca1.uscourts.gov.

the pretrial office, the probation office, this Court's personnel, the prosecutor, and this Court. They were not just paid, *they were paid long time ago* [sic].

*Crim. No. 05–133, Docket Document No. 366, at 3* (emphasis in original).

Zeno insists that he was well within his right to make such comments, and points to the Supreme Court case *In re Snyder* ("*Snyder*") as evidence that his position is correct. 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). In *Snyder*, the Supreme Court held that an attorney could not be sanctioned solely for the content of a letter he wrote to a court employee criticizing the court's administration of the CJA, saying that lawyers "may appropriately express criticism on such matters." *Id.* at 646, 105 S.Ct. 2874.

However, *Snyder* is distinguishable because it emphasized the isolated nature of the attorney's "ill-mannered" delivery of his criticism. In *Snyder*, the attorney's letter had complained that:

> [N]ot only are we paid an amount of money which does not even cover our overhead, but we have to go through extreme gymnastics even to receive the puny amounts which the federal courts authorize for this work. We have sent you everything we have concerning our representation, and I am not sending you anything else. You can take it or leave it.

*Id.* at 636, 105 S.Ct. 2874. While the Supreme Court ultimately excused the letter's harsh tone, it did so because "*a single incident of rudeness or lack of professional courtesy—in this context* ... does [not] rise to the level of conduct unbecoming a member of the bar warranting suspension

from practice." *Id.* at 647, 105 S.Ct. 2874 (quotation omitted) (emphasis ours). The *Snyder* Court reminded that:

> All persons involved in the judicial process—judges, litigants, witnesses, and court officers—owe a duty of courtesy to all other participants. The necessity for civility in the inherently contentious setting of the adversary process suggests that members of the bar cast criticisms of the system in a professional and civil tone.

*Id.*

In sharp contrast to the attorney's conduct in *Snyder*, Zeno's blunt CJA criticism is not the only questionable conduct subject to scrutiny in this disciplinary review. The allegations of disrespect in the context of Zeno's CJA criticism are accompanied by Judge Domínguez' allegations that Zeno was disrespectful toward him as well in another case.

■ We now proceed to the substance of what Zeno said to Judge Domínguez. After Judge Domínguez expressed concern as to the paucity of legal argument in Zeno's reconsideration motion, Zeno referred Judge Domínguez "to Puerto Rico's common wisdom that 'para lo que está a la vista no hacen falta espejuelos.' "[8] *Crim. No. 06–0111, Docket Document No. 94.* The idea that Zeno would upbraid Judge Domínguez for noting that Zeno had failed to do what every lawyer is absolutely required to do, i.e., fully brief every single one of his client's arguments before the court, is breathtaking in its obliviousness and insolence. Although it is important that a lawyer's arguments not be deemed a violation of professional code "so long as the lawyer does not in some way create an obstruction which blocks the judge's per-

---

8. Meaning "No need to wear glasses to understand the obvious." The Spanish common wisdom statement is culturally a very strong criticism that implies stupidity on the part of the recipient of the comment.

formance of his duty," *In re McConnell,* 370 U.S. 230, 236, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962), we do not even view Zeno's "no need to explain the obvious" quip as an argument so much as a snide remark made at Judge Domínguez' expense. Even if we could, by some stretch of the imagination, hold that Zeno's comment was an argument, however, we would still conclude that it disrupted Judge Domínguez' court and violated Rule 3.5(d). The twin tasks of a trial court are to "sift[ ] through conflicting versions of the facts to discover where truth lies, and apply[ ] the correct legal principles to the facts as found." *Office of Disciplinary Counsel v. Breiner,* 89 Hawai'i 167, 969 P.2d 1285, 1291 (1999). Zeno's "no need to explain the obvious" remark contributed nothing to these tasks, but, rather, undermined them. The standards of conduct we are demanding Zeno to comply with are not difficult; we simply expect Zeno to abide by fundamental precepts of respectful and productive lawyering. "[W]e merely require that the members of a learned profession, who are privileged to serve as officers of the court, act in accordance with the time-honored traditions that experience has taught us are necessary to prevent the barroom brawl." *Id.*

Finally, we come to Zeno's November 5, 2006, informative motion, filed before Judge Domínguez, in which he baldly accused Judge Domínguez of having a pro-government bias for having allegedly mocked Zeno's arguments in a hearing convened the week before. *Crim. No. 06–111, Docket Document No. 96.* Zeno railed that "this Court's apparent bias in favor of the government does nothing to help sharpen the system to produce the best of society and of our judicial system." *Id.* And then, later, Zeno sniffed that "this is not the first time that [he] has complained to this Court as to its behavior and apparent mockery of [his positions].

Maybe such is the way this Court does business, but the undersigned does not appreciate it and greatly resents it." *Id.*

Here, Zeno once again misconceives the proper approach to challenging a judge's conduct. If Zeno felt that he had legitimate reason to believe that Judge Domínguez was biased against his client or him, then the proper response would have been to make a thoroughly—researched and thoughtfully—written recusal motion under relevant federal law. Instead, Zeno opted to use invective against Judge Domínguez that neither requested nor gained recusal for his client, and that, therefore, had the sole effect of insulting Judge Domínguez and disrupting the trial court's operations in violation of Rule 3.5(d).

We would also like to observe that Zeno appeared to realize, even as he ranted against Judge Cerezo, that he was arguably crossing a line, and felt compelled to try to justify his rudeness in advance by saying that "this Court should impose no sanctions on the undersigned for this motion since it is merely a statement of the truth as he perceives it and there is nothing wrong with saying the truth as long as it is done with respect as we do herein." *Crim. No. 05–133, Docket Document No. 366.* We hardly need to point out the absurdity of Zeno submitting a motion before this court with content so patently questionable that he requests not to be sanctioned for it even as he files it. Moreover, we find Zeno's explicit insistence that he is chiding Judge Cerezo "with respect" to be disingenuous and plainly contradictory.

Zeno took the same approach with Judge Domínguez when he added the tag *"[w]ith all due respect"* to his "no need to explain the obvious comment." It is futile for Zeno to think that he can neutralize a disrespectful communication sim-

ply by prefacing it with the phrase "with all due respect." The fact that Zeno underlined and boldfaced the phrase does little to change our opinion in this regard.

## C. *Sanctions*

Given our discussion of the Supreme Court's decision in *Snyder*, we believe the additional Rule 3.5(d) violations Zeno committed before Judge Domínguez enable us to exercise our authority to discipline Zeno. The United States District Court for the District of Puerto Rico has adopted the ABA's Model Rules of Professional Conduct as the standard of professional conduct for attorneys practicing here, *United States v. Morrell–Corrada*, 343 F.Supp.2d 80, 84 (D.P.R.2004)(citing Loc. R. Dist. P.R. R. 83.5(a)), and the rules "carr[y] with [them] the option of a disciplinary sanction as a supplement to the traditional power of judges to punish disruptive behavior as contempt of court." *Office of Disciplinary Counsel v. Breiner*, 89 Hawai'i 167, 969 P.2d 1285, 1291 (1999); *see also Grievance Adm'r v. Fieger*, 476 Mich. 231, 297, 719 N.W.2d 123 (2006).

■ We find that Zeno's misconduct warrants a suspension from the practice of law before this court for three months. He will also be removed from participation in the Criminal Justice Act Panel for the remainder of his term, which expires on September 17, 2008. Given Zeno's chronic tendency to violate Rule 3.5(d) by using belligerent and insulting prose in addressing members of this court instead of measured discussions of fact and law,[9] we suggest that he take advantage of this lenient suspension from federal practice to familiarize himself with the standards of conduct set forth by the ABA's Model Rules of Professional Conduct for attorneys. He

should reflect about the fact that successful advocacy entails and requires attorneys to navigate the waters of litigation with patience and civility.

## D. *Recusal Motions*

On April 13, 2007, Zeno filed five recusal motions before this court in which he took the position that practically none of the judges on this court are impartial enough to conduct the disciplinary review that the undersigned has just concluded. He asked Judge Cerezo, Judge Domínguez, Judge Delgado–Colón, Judge García–Gregory, and the undersigned to recuse themselves under 28 U.S.C. § 144 and § 455(a). *Docket Document Nos. 5–10.*

■ The motion requesting that the undersigned recuse himself is denied. *Docket Document No. 6.* Zeno argues that the undersigned is prejudiced against him because: (1) the undersigned appears to have prejudged Zeno in issuing the February 16, 2007, Order to Show Cause, and in conducting this disciplinary review, in response to Judge Cerezo's and Judge Domínguez' complaints, and (2) the undersigned improperly expanded the disciplinary investigation by mentioning other incidents of disrespect allegedly committed by Zeno that were unrelated to Judge Cerezo's and Judge Domínguez' complaints in the February 16, 2007, Order to Show Cause. *Id.* Zeno also argues that the undersigned should recuse himself for all the reasons that Zeno presented in another recusal motion filed in a 2006 criminal case over which the undersigned presided. *Id.*

Zeno's first argument is wholly without merit. Zeno asserts that the undersigned's issuance of the February 16, 2007,

---

9. The reader of this Opinion and Order should critically examine the background information supplied in the Order to Show

Cause dated February 16, 2007, *Docket Document No. 1,* and cited in Footnote 2.

Order to Show Cause, or the undersigned's execution of the instant disciplinary proceeding, indicates a prejudgment of Judge Cerezo's and Judge Domínguez' complaints against him. Upon receiving Judge Cerezo's and Judge Domínguez' requests for disciplinary review of Zeno, it is the undersigned's duty to initiate the process, and the February 16, 2007, Order to Show Cause gave Zeno detailed notice of what he should address in his response. There was nothing in our February 16, 2007, Order to Show Cause that exhibited the prejudice Zeno alleges. In fact, it was primarily designed to benefit him and give him the opportunity to address charges leveled against him.

We are unpersuaded by Zeno's second argument as well, in which he asserts that the February 16, 2007, Order's mere mention of other instances in which he behaved questionably shows that the undersigned is biased against him. It would certainly have been unfair had we suddenly tried to make Zeno answer for all of these past instances, which we explicitly recognized in our Order to Show Cause. Moreover, we were extremely cautious in communicating to Zeno in our Order that he did not have to respond to anything other than the conduct addressed in Judge Cerezo's and Judge Domínguez' complaints. We nonetheless chose to catalogue some of Zeno's pattern of prior conduct before this court in what we now realize was a futile attempt to help Zeno take the Order to Show Cause seriously, because this was but the latest chapter in his developing a reputation for being chronically disrespectful towards the members of this court. Our hope was that Zeno would realize that treating the members of this court with such blatant disregard cannot only result in grounds for disciplinary action but is also detrimental to his clients.

Zeno's final argument fails as well. If the undersigned did not recuse himself in the earlier criminal case to which Zeno referred, and if Zeno did not successfully appeal that refusal to recuse, then there is no reason, without any aggravating circumstances, why Zeno should prevail on those arguments in this case.

We need not tarry long to deny the four motions pertaining to Judge Cerezo, Judge Domínguez, Judge Delgado–Colón, and Judge García–Gregory. *Docket Document Nos. 7–10.* Judge Cerezo and Judge Domínguez are not participating in the decision to impose sanctions. Judges García–Gregory and Delgado–Colón will not recuse themselves because there is no valid reason to request such recusal. As an aside, though, we note that the four recusal motions as drafted suffer the same problem that we have just discussed in great detail in this opinion, and that we already warned Zeno about in our February 16, 2007, Order to Show Cause, which is that Zeno uses them to disrespectfully level bald accusations that these judges are somehow blinded by an inexplicable prejudice against him by virtue of some past, and extremely vaguely-described, decision they have made against him or one of his clients with which he disagrees but has never successfully appealed. This is unacceptable lawyering and is aggravated by the fact that the motions also bear Zeno's trademark refusal to cite to any case law that would suggest that he is entitled to what he asks for.

## II.

In accordance with the foregoing, we hereby **ORDER** Zeno **SUSPENDED** from the practice of law before the United States District Court for the District of Puerto Rico for three (3) months beginning today. He will be removed from the Criminal Justice Act Panel for the remain-

der of his present term, which expires on September 17, 2008. If Zeno has been retained to represent paying clients before this court in litigation already filed as of this date, he need not withdraw. In order to continue those representations under this exception, however, we hereby **OR-DER** Zeno to submit a list of them to this court **within ten (10) days.**

**IT IS SO ORDERED.**