# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 3, 2019 Session

## JAMES A. DUNLAP, JR. v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Davidson County**
**No. 18-449-II         Don R. Ash, Senior Judge**

_____

**No. M2018-01919-SC-R3-BP**

_____

A Board of Professional Responsibility hearing panel decided that an attorney should be suspended for one year for violating Tennessee Rules of Professional Conduct 3.3 (candor toward the tribunal), 3.5(a) (impartiality and decorum of the tribunal), 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (conduct that is prejudicial to the administration of justice). The attorney appealed, and the trial court affirmed. After careful review, we affirm the judgment of the trial court.

**Tenn. Sup. Ct. R. 9, § 33.1(d); Judgment of the Trial Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and HOLLY KIRBY, JJ., joined. ROGER A. PAGE, J., not participating.

James A. Dunlap, Jr., Atlanta, Georgia, Pro Se.

Sandy Garrett and Jerry D. Morgan, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

## OPINION

## I.

### Background and Disciplinary Action

In August 2013, James A. Dunlap, Jr., a Georgia lawyer, was admitted to practice pro hac vice on behalf of Tri-Cities Holdings, LLC, which proposed to operate an outpatient methadone clinic in Johnson City, Tennessee. To provide these health services,

Tri-Cities Holdings had to obtain a Certificate of Need from the Tennessee Health Services and Development Agency (HSDA). *See* Tenn. Code Ann. § 68-11-1607(a)(4) (2013). In March 2013, Tri-Cities Holdings applied for the Certificate of Need and gave the required public notice, including notice to state, county, and local government officials in Johnson City.[1] Tri-Cities Holdings also had to obtain a license from the Tennessee Department of Mental Health and Substance Abuse Services (TMH).[2] TMH had to conduct an independent review of the application to ensure the accuracy and completeness of the information provided. *See id.* § 68-11-1608(a) (2013).

While its Certificate of Need application was pending, Tri-Cities Holdings filed the first of three federal lawsuits related to the proposed methadone clinic. In April 2013, Mr. Dunlap filed suit for Tri-Cities Holdings against the City of Johnson City, Tennessee,[3] in the United States District Court for the Eastern District of Tennessee (Tri-Cities I). The lawsuit sought a declaratory judgment that the city's zoning ordinance concerning methadone clinics violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. *Tri-Cities Holdings LLC v. City of Johnson City*, No. 2:13-CV-108, 2013 WL 2635337,

---

[1] (c)(1) Each application shall be commenced by the filing of a letter of intent. . . . At the time of filing, the applicant shall cause the letter of intent to be published in a newspaper of general circulation in the proposed service area of the project.

. . . .

(3) Applications for a certificate of need . . . shall be filed within five (5) days from the date of publication of the letter of intent. Within ten (10) days of the filing of an application for a nonresidential substitution-based treatment center for opiate addiction with the agency, the applicant shall send a notice to the county mayor of the county in which the facility is proposed to be located, the member of the house of representatives and the senator of the general assembly representing the district in which the facility is proposed to be located, and to the mayor of the municipality, if the facility is proposed to be located within the corporate boundaries of a municipality, by certified mail, return receipt requested, informing such officials that an application for a nonresidential methadone treatment facility has been filed with the agency by the applicant.

Tenn. Code Ann. § 68-11-1607(c)(1), (3) (2013).

[2] The department of mental health and substance abuse services shall license services and facilities operated for persons with mental illness and/or serious emotional disturbance or in need of alcohol and drug abuse prevention and/or treatment services.

Tenn. Code Ann. § 33-2-403(a) (Supp. 2013).

[3] The complaint also named as defendants the Johnson City Board of Commissioners and the Johnson City Board of Zoning Appeals. We refer to these entities as "Johnson City."

- 2 -

at \*2 (E.D. Tenn. June 12, 2013). Tri-Cities Holdings requested an injunction restraining Johnson City from withholding the necessary permits for operation of a methadone clinic. *Id.* On June 12, 2013, the federal court dismissed the action without prejudice, finding that Tri-Cities Holdings' claims were not ripe for disposition while its Certificate of Need application was pending before HSDA. *Id.* at \*6. Tri-Cities Holdings did not appeal this decision.

On June 26, 2013, HSDA denied Tri-Cities Holdings' application for a Certificate of Need.[4] According to a statement by an HSDA board member, the denial was based on a lack of need for the proposed services because other effective treatment options for opiate addiction were available in the area. TMH had also concluded that there was no need for the proposed services.

On July 2, 2013, Mr. Dunlap, on behalf of Tri-Cities Holdings, filed an administrative appeal of the denial of the Certificate of Need with the Tennessee Secretary of State Administrative Procedures Division. The appeal was assigned to Administrative Law Judge Kim Summers.

On July 8, 2013, Mr. Dunlap filed suit for Tri-Cities Holdings (Tri-Cities II) in the United States District Court for the Middle District of Tennessee naming HSDA and Johnson City as defendants. The complaint alleged that HSDA and Johnson City had invalid ordinances, statutes, and regulations; discriminated against disabled persons; and failed to provide a reasonable accommodation or modification in violation of the Rehabilitation Act of 1973 and the ADA. Tri-Cities Holdings asserted also that HSDA erred in denying the Certificate of Need application. Tri-Cities II was transferred to the United States District Court for the Eastern District of Tennessee. *Tri-Cities Holdings LLC v. Tenn. Health Servs. & Dev. Agency*, No. 3:13-0669, 2013 WL 6019374, at \*1 (M.D. Tenn. Nov. 13, 2013) (Order).

On July 25, 2013, Mr. Dunlap wrote to the Administrative Procedures Division requesting that HSDA, as an accommodation under the ADA, allow Tri-Cities Holdings to open a treatment center in Johnson City. Mr. Dunlap stated that he would be asking the federal court in Tri-Cities II to stay the administrative appeal.

On July 28, 2013, Mr. Dunlap wrote directly to Judge Summers requesting her to provide, under the ADA, a reasonable modification of all applicable state and local rules to allow Tri-Cities Holdings to locate its treatment center in Johnson City. Mr. Dunlap

---

[4] HSDA may grant a Certificate of Need only when the proposed services are "necessary to provide needed health care in the . . . [proposed service area], can be economically accomplished and maintained, and will contribute to the orderly development of [an] adequate and effective health care" system. Tenn. Code Ann. § 68-11-1609(b) (2013).

also requested a stay of the administrative appeal while Tri-Cities II was pending. He did not inform Judge Summers that the federal court had previously dismissed Tri-Cities I because of the ongoing Certificate of Need application. Counsel for HSDA opposed Mr. Dunlap's request for a stay, asserting that Tri-Cities Holdings needed to exhaust its administrative remedies before Tri-Cities II was ripe for judicial review. Mr. Dunlap then sent another letter asking Judge Summers to stay the appeal, asserting that the administrative appeal claims were included as pendent claims in Tri-Cities II. Although Mr. Dunlap's letter stated that he was attaching a copy of the Tri-Cities II complaint, he only attached a copy of the title and index pages of the complaint.

After a July 31, 2013 telephonic scheduling conference, Judge Summers entered an order stating that she would conduct a conference call on September 5, 2013, before setting the administrative appeal for hearing or ruling on Tri-Cities Holdings' request for a stay of the appeal.

After the conference call on September 5, 2013, Judge Summers held the administrative appeal in abeyance and scheduled another conference call for November 5, 2013. The purpose of the November call was to discuss the status of the related federal case based on Judge Summers' understanding that the federal case had not been resolved.

On November 5, 2013, Judge Summers held a third telephonic scheduling conference with counsel. After Mr. Dunlap advised her that the status of the federal case had not changed, Judge Summers again held the appeal in abeyance and scheduled another conference call for January 10, 2014.

Meanwhile in Tri-Cities II, Johnson City moved for a stay and dismissal. The bases of the motion for stay were that Tri-Cities II had been filed in the Middle District in defiance of the Eastern District's dismissal of Tri-Cities I and that Tri-Cities Holdings had not obtained a Certificate of Need. Mr. Dunlap expressed disagreement with the ripeness ruling in Tri-Cities I and suggested that Tri-Cities II should proceed because the administrative appeal was on hold awaiting direction from the federal court. A magistrate judge from the Eastern District expressed concern that the administrative appeal had been stayed at Mr. Dunlap's request. On December 10, 2013, the magistrate judge entered an order, finding that the filing of Tri-Cities II in the Middle District was "rather obvious judge-shopping" that showed "a contemptuous attitude toward" the court's earlier decision. The magistrate judge stayed discovery, concluding that the district judge would not change his opinion in Tri-Cities I that Tri-Cities Holdings had to exhaust its administrative remedies before the federal court would hear the ADA claims in Tri-Cities II. He also held that the ruling of the court in Tri-Cities I was binding on Tri-Cities Holdings, thus it had to complete the administrative appeal. According to the magistrate judge, Mr. Dunlap's efforts to obtain a stay in the administrative appeal contradicted

Tri-Cities Holdings' professed need for a quick resolution of its request for a Certificate of Need.

On January 8, 2014, Judge Summers emailed Mr. Dunlap and HSDA's counsel to see if there were new developments in the case. Within minutes, Mr. Dunlap responded that there were no new developments and suggested that Judge Summers stay the appeal for another sixty days, despite the December 10, 2013 ruling in Tri-Cities II. HSDA's counsel stated there had been new developments, and he would submit a filing to that effect. Based on these responses, Judge Summers did not have the January 10, 2014 conference call.

On March 7, 2014, HSDA's counsel moved to set a hearing date for the administrative appeal and attached a copy of the magistrate judge's December 10, 2013 order. On March 11, 2014, Mr. Dunlap responded by filing an "Objection to Motion to Set Hearing and Demand for Reasonable Modification under the ADA." He asserted that under federal law, Judge Summers had to issue the Certificate of Need without a hearing as a reasonable modification under the ADA. Mr. Dunlap stated that Judge Summers' failure to issue the Certificate of Need would create a cause of action against her and the tribunal (that is, the Administrative Procedures Division of the Secretary of State). He added that Tri-Cities Holdings might request that the United States Department of Justice include Judge Summers and the tribunal in an ADA enforcement action. Mr. Dunlap declared that the administrative appeal amounted to a "scheme or artifice" to violate the ADA; that Tri-Cities Holdings' opposing parties were trying to enlist Judge Summers to be their "fixer"; and that Judge Summers would risk "aiding and abetting" the opposing parties if she were to move forward with the administrative appeal.

*Revocation of Admission Pro Hac Vice*

On March 14, 2014, Judge Summers sua sponte issued an order revoking Mr. Dunlap's admission to appear pro hac vice. Judge Summers found that Mr. Dunlap never disclosed that the federal court had dismissed Tri-Cities I as not ripe for disposition because Tri-Cities Holdings' application for a Certificate of Need had not yet been granted or denied; never disclosed the federal court's stay in Tri-Cities II in deference to the administrative appeal; threatened to join her and the tribunal in a federal action should the administrative appeal be set for hearing; threatened Judge Summers and the tribunal with an ADA enforcement action by the United States Department of Justice; and misrepresented the status of the federal case to coerce a decision without a hearing in favor of Tri-Cities Holdings. Judge Summers concluded that this conduct violated Tennessee Rules of Professional Conduct (RPC) 3.3 (candor toward the tribunal), 3.5 (impartiality and decorum of the tribunal), and 8.4 (misconduct), and breached the conditions on which Mr. Dunlap had been granted admission pro hac vice.

On April 2, 2014, Judge Summers denied Mr. Dunlap's motion for reconsideration of the order revoking his admission. Judge Summers' order, among other things, noted that Mr. Dunlap provided no authority for his position that the Certificate of Need should be granted without a hearing and that "advancing that position under the threat of legal action far exceed[ed] simply pointing out to the tribunal its obligations under law and potential penalties for noncompliance."

Judge Summers also denied Mr. Dunlap's motion for recusal. Judge Summers noted that she had stayed the appeal over HSDA's objection and past the 180-day statutory deadline for a hearing[5] based on Mr. Dunlap's request and his representations that the federal court needed to first address issues relating to the ADA. She added that the revocation of Mr. Dunlap's admission did not result from bias or retaliation. Instead, the revocation was based on Mr. Dunlap's failure to provide relevant information about the federal action and from his threats and unprofessional conduct toward the tribunal.

Mr. Dunlap appealed the order revoking his admission pro hac vice to the Chancery Court for Davidson County. In December 2014, the chancery court affirmed, finding that substantial and material evidence supported Judge Summers' conclusion that Mr. Dunlap misrepresented the status of federal litigation to coerce a decision in favor of Tri-Cities Holdings. The chancery court observed that "[n]o lawyer is entitled to use threats and intimidation to force a judge to perform a discretionary act and such conduct evinces a persistent resolve to undermine and to bend the justice system to that lawyer's will."[6]

Tri-Cities Holdings appealed, and the Court of Appeals affirmed the chancery court. *Tri-Cities Holdings, LLC v. Tenn. Health Servs. & Dev. Agency*, No. M2015-00058-COA-R3-CV, 2016 WL 721067, at *1 (Tenn. Ct. App. Feb. 22, 2016). The Court of Appeals held that the revocation of Mr. Dunlap's admission was appropriate because he had violated RPCs 3.3, 3.5, and 8.4. *Id.* at *10. The Tennessee Supreme Court denied Tri-Cities Holdings' application for permission to appeal. *Tri-Cities Holdings, LLC v. Tenn. Health Servs. & Dev. Agency*, No. M2015-00058-SC-R11-CV (Tenn. June 23, 2016) (Order).

Meanwhile, on May 19, 2014, Mr. Dunlap filed a third federal lawsuit for Tri-Cities Holdings in the United States District Court for the Middle District of Tennessee (Tri-Cities III). Tri-Cities Holdings sued Judge Summers in her official

---

[5] *See* Tenn. Code Ann. § 68-11-1610(d) (2013).

[6] The chancellor also referred the matter to the Board of Professional Responsibility for investigation.

capacity as an administrative law judge.[7] The lawsuit alleged that Judge Summers intentionally violated the ADA by failing to grant a Certificate of Need to Tri-Cities Holdings as a reasonable modification, that she retaliated against Tri-Cities Holdings and Mr. Dunlap by making biased and false allegations that Mr. Dunlap misrepresented the status of federal litigation, and that she failed to schedule a final hearing in the administrative appeal within the 180-day statutory deadline. The United States District Court for the Middle District of Tennessee transferred the case to the Eastern District, which granted the defendants' motion for summary judgment and dismissed the case with prejudice. *Tri-Cities Holdings LLC v. Tenn. Admin. Procedures Div.*, 260 F. Supp. 3d 913, 917 (E.D. Tenn. 2017), *aff'd*, 726 F. App'x 298 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 126, 202 L. Ed. 2d 33 (2018). The federal court found that "Mr. Dunlap was clearly less than candid with the administrative tribunal, misrepresented various matters, and tried to obstruct the orderly progression of the administrative appeal." *Id.* at 931.

*Disciplinary Action*

Under Tennessee Supreme Court Rule 19, an attorney admitted pro hac vice must follow the Tennessee Rules of Professional Conduct. Tenn. Sup. Ct. R. 19(d). Under Tennessee Supreme Court Rule 9, section 8.1, the attorney is subject to the disciplinary jurisdiction of this Court and its Board of Professional Responsibility (the Board) for violating the RPCs. Tenn. Sup. Ct. R. 9, § 8.1.

In November 2016, the Board filed a petition for discipline against Mr. Dunlap, alleging that his conduct during the administrative appeal violated RPCs 3.1 (meritorious claims and contentions), 3.2 (expediting litigation), 3.3(a)-(d), (g), (h) (candor toward the tribunal), 3.5(a) (impartiality and decorum of the tribunal), 4.4(a) (respect for the rights of third persons), and 8.4(a), (c), (d) (misconduct). In his response to the petition, Mr. Dunlap denied that he had violated any RPCs, denied that his actions during the administrative appeal constituted misconduct or were unethical, and denied that he had misrepresented or failed to inform Judge Summers of the status of federal litigation.

On November 1, 2017, a hearing panel of the Board heard the matter. The Board presented the testimony of Judge Summers, and Mr. Dunlap testified and presented the testimony of Nashville attorney James Higgins.

---

[7] Other defendants included the Tennessee Secretary of State Administrative Procedures Division; Tre Hargett, in his official capacity as Secretary of State, the Tennessee Department of Mental Health and Substance Abuse Services; and E. Douglas Varney, in his official capacity as Commissioner of the Tennessee Department of Mental Health and Substance Abuse Services. The lawsuit did not name Johnson City or HSDA as defendants.

Judge Summers testified that she had been an administrative law judge in the Administrative Procedures Division of the Secretary of State for almost six years. She had handled administrative actions for state agencies and boards, including medical services appeals, safety forfeiture cases, and personnel actions.

Judge Summers explained there are specific statutory timeframes for administrative appeals: the judge should hold an initial pre-hearing conference within fifteen days after the filing of the appeal petition; the hearing should be held within 180 days of the petition's filing; and an initial order should be entered within sixty days after the hearing. *See* Tenn. Code Ann. § 68-11-1610(d)-(e). Judge Summers testified that these deadlines could be waived and mainly protect petitioners so that cases do not languish. Tri-Cities Holdings waived the deadlines over the objection of HSDA.

Judge Summers explained that when she receives a case assignment, she contacts the parties to set up a pre-hearing conference and asks whether the parties are interested in mediation. If mediation is not an option, she discusses hearing dates with counsel. She typically sets up the pre-hearing conference by email and then enters an order with discovery deadlines and hearing dates.

Judge Summers held an initial pre-hearing conference call with counsel for the parties on July 31, 2013. Mr. Dunlap informed Judge Summers of pending litigation in federal court that he said could resolve the administrative appeal and assured her that they would hear from the federal court "very soon." Mr. Dunlap also stated during the conference call that he would ask the federal court to stay the administrative appeal if she did not do so, as he had mentioned in a letter dated July 25, 2013, to the Administrative Procedures Division. Counsel for HSDA noted his objection to a stay in correspondence before the conference call. Based on this information, Judge Summers decided to stay the administrative appeal and let the federal case play out. She did not see any harm to HSDA in waiting for resolution of the federal case because Mr. Dunlap's client, Tri-Cities Holdings, was the petitioner in the case. Judge Summers scheduled another conference call on September 5, 2013, to discuss the status of the federal litigation.

During the conference call on September 5, 2013, Mr. Dunlap informed Judge Summers that there had been no resolution of the federal case that would allow the administrative matter to proceed. Judge Summers set another conference call for November 5, 2013. During that call, Mr. Dunlap again told Judge Summers that the federal case had not been resolved, so she scheduled another conference call for January 10, 2014. She explained, "[E]very time we spoke, I was led to believe that what was coming from the federal court would be imminent."

Judge Summers viewed Mr. Dunlap's failure to mention Tri-Cities I while advancing a position contrary to the ruling in that case as dishonest. She described HSDA's counsel's delay in disclosing the dismissal of Tri-Cities I as a failure of zealous advocacy.

In response to Judge Summers' January 8, 2014 email asking whether there were new developments in the federal case, Mr. Dunlap replied that there were no new developments even though the federal court had made clear in its December 2015 ruling that no action would be taken in the federal case until the administrative appeal was concluded. Mr. Dunlap suggested another sixty-day stay of the administrative appeal. Counsel for HSDA disagreed, indicating there were new developments and that he would be filing an explanation. The planned January 10, 2014 conference call was cancelled.

On March 7, 2014, HSDA moved to set the administrative appeal for hearing. Judge Summers learned from HSDA's motion that the United States District Court for the Eastern District of Tennessee had dismissed Tri-Cities I; that Tri-Cities Holdings had filed Tri-Cities II in the United States District Court for the Middle District of Tennessee; that Tri-Cities II had been transferred to the United States District Court for the Eastern District of Tennessee; and that a magistrate judge in the Eastern District of Tennessee had stayed discovery in Tri-Cities II on December 10, 2013, pending resolution of the administrative appeal. Judge Summers explained that she would have proceeded with a hearing on the administrative appeal had she known these facts because it was clear that the federal court wanted the administrative process to play out before considering Tri-Cities Holdings' ADA claims. Judge Summers was "incredulous" that Mr. Dunlap had misinformed her about what was happening in the federal case, resulting in a stay of the administrative appeal for eight to nine months. Judge Summers stated that Mr. Dunlap never changed his position in the administrative appeal that she should wait for the federal court to decide the case.

Judge Summers perceived several statements made by Mr. Dunlap in his response to HSDA's motion to set the appeal for hearing as threats. These included Mr. Dunlap's statements that she would become an illegal "fixer" for HSDA and Johnson City if she set the matter for hearing, that he would have to join her and the tribunal in the pending federal case if she scheduled a hearing, and that the continuing failure to issue a Certificate of Need could result in an ADA enforcement action by the United States Department of Justice against her and the tribunal. Judge Summers understood that Mr. Dunlap would sue her if she "didn't do what he wanted [her] to do"—that is, "to just issue a [Certificate of Need] without a hearing."

Judge Summers said that she revoked Mr. Dunlap's admission pro hac vice because his response to HSDA's motion to set the appeal for hearing was not acceptable

- 9 -

advocacy but a gross violation of the terms on which he was admitted to practice. She concluded that Mr. Dunlap's coercion and misrepresentations were "a flagrant attempt to improperly influence a judge in violation of [RPCs] 3.3, 3.5, and 8.4." After Judge Summers revoked Mr. Dunlap's pro hac vice privileges, he filed a motion for her to reconsider that decision and a motion for her to recuse herself from the administrative proceedings. Judge Summers denied both motions. Tri-Cities Holdings later dismissed its administrative appeal.

*Testimony of Mr. Dunlap*

Mr. Dunlap testified that he had been licensed to practice law in Georgia since 1988 and had never been disciplined for professional misconduct. He said that he was a fourth generation attorney who had been "steeped in" the legal profession since childhood. He grew up in Gainesville, Georgia, but some members of his family had until recently lived in Johnson City for fifty years. Mr. Dunlap stated that the disciplinary proceeding arose from his representation of a company (in which his family had an ownership interest) that sought to bring "standard of care treatment" to Johnson City. He asserted that he represented clients forcefully but within the bounds of appropriate professional conduct.

Mr. Dunlap explained that he did not disclose to Judge Summers the dismissal of Tri-Cities I because the dismissal was not relevant to the administrative proceeding. He noted that HSDA was not a party to Tri-Cities I. Mr. Dunlap also stressed that HSDA's counsel did not bring the dismissal of the case to Judge Summers' attention until March 2014 when HSDA moved to set the administrative matter for hearing.

Mr. Dunlap had varying explanations for his failure to inform Judge Summers that the federal court had stayed discovery in Tri-Cities II to allow the administrative appeal to proceed. At different times during the hearing, he testified that (1) he understood that attorneys from the Tennessee Attorney General's Office representing HSDA in Tri-Cities II were advising both HSDA and Judge Summers on federal court developments; (2) it did not "register" with him that the federal court had stayed discovery to let the administrative appeal move forward; (3) the discovery stay in federal court was not relevant to the administrative proceeding; (4) he expected to discuss the December 10, 2013 federal court order staying discovery during the conference call scheduled for January 10, 2014; and (5) he was waiting for HSDA's counsel to disclose the discovery stay in the forthcoming filing to report on new developments in the federal action.

In response to the Board's allegations that he had misrepresented facts and threatened Judge Summers, Mr. Dunlap stated that he understood the ADA cases to mean that he was permitted "to represent the rights of [his] client to, for lack of a better word,

threaten a lawsuit against [Judge Summers] if she did not do what [he], based on [his] studied opinion, [believed] she was supposed to do." He conceded, however, that he was aware of no authority for suing a judge in the midst of a proceeding for failing to take a requested action. Mr. Dunlap also claimed that if Judge Summers had gone ahead with a hearing, he would have had to bring in an expert witness from New York City and re-do the Certificate of Need hearing, which would have been an ADA violation by Judge Summers. He admitted that he knew of no case under the ADA or "similar statutory structure" under which a Certificate of Need administrative appeal would be either unnecessary or a violation of federal law.

About his statements in letters to Judge Summers, Mr. Dunlap testified that he intended to "really get her attention" and asserted that it was appropriate for him to "speak as forcefully and stridently as [he] could" because he thought she did not understand her duties under the ADA. When asked about the language used in his objection to the motion to set the appeal for hearing, Mr. Dunlap admitted that he had not used this type of language before in communicating with a judge and that he may have used a poor choice of words. He regretted using the term "fixer" because of the disastrous consequences, but he felt that he was warning Judge Summers that if she held a hearing, she would violate her judicial duties under the ADA. Mr. Dunlap stated he still felt the same way.

Mr. Dunlap explained that when he referred to the administrative appeal process as an "artifice or scheme to violate the ADA," he was using a term of art from his practice in securities law. He said he was trying to characterize the administrative appeal as a device to give the appearance of compliance with the ADA while not really moving forward. Mr. Dunlap said that the filing of Tri-Cities III shows he was not pretending when he told Judge Summers he would sue her. Mr. Dunlap was using "big guns" and warning Judge Summers of trouble because the Department of Justice had suggested that it would likely intervene on behalf of Tri-Cities Holdings. This purported position of the Department of Justice gave him more confidence in his federal case and in the potential action against Judge Summers.

Mr. Dunlap asked the hearing panel to consider as mitigating circumstances his efforts to bring relief to the opioid epidemic in Tennessee, his long years of practice in the law with no disciplinary record, his contributions for the public benefit, and the fact that there was no harm from his failure to disclose the discovery stay. He expressed that the whole experience had been "a very strong deterrent" for him, but said he was "proud of the potential of this case and what [he had] done in this case."

*Testimony of Mr. Higgins*

Mr. Higgins served as local counsel with Mr. Dunlap in the federal actions seeking redress under the ADA. He came on board after the dismissal of Tri-Cities I and HSDA's denial of Tri-Cities Holdings' application for a Certificate of Need. This was Mr. Higgins' first case concerning a Certificate of Need for a methadone clinic, but he believed it had merit under the ADA. He explained that he and Mr. Dunlap felt the ADA claims were strong and that there was a better chance to prove the claims in federal court than in the administrative appeal.

Mr. Higgins said he could see Mr. Dunlap's statements to Judge Summers as "setting any judge off." He explained that Mr. Dunlap had great writing and analytical skills and was an aggressive litigator. Mr. Dunlap's tact when dealing with the court and other attorneys, however, was not his strength. Mr. Higgins described Mr. Dunlap as courteous and professional, but direct and aggressive.

Mr. Higgins did not think Mr. Dunlap intended to offend Judge Summers or to be unethical in his statements to her. Mr. Higgins discussed with Mr. Dunlap his objection to HSDA's motion to set a hearing, and Mr. Dunlap could not understand how the objection was offensive. Mr. Higgins agreed that Mr. Dunlap's conduct was "not the right thing to do, or stupid" but was not unethical or illegal. Mr. Higgins testified that even though he would have done some things differently, Mr. Dunlap was "thoughtful in everything he did."

*Decision of the Hearing Panel*

On February 27, 2018, the hearing panel entered its judgment, concluding that Mr. Dunlap violated RPCs 3.3, 3.5(a), 8.4(c), and 8.4(d) and imposing a one-year suspension as an appropriate sanction for the misconduct.

The hearing panel found Mr. Dunlap violated RPCs 3.3 and 8.4(c) by stating to Judge Summers during conference calls on July 31 and September 5, 2013, that he intended to ask the federal court to stay the administrative appeal, without disclosing to her that the United States District Court for the Eastern District of Tennessee had dismissed Tri-Cities I as not ripe for adjudication while the Certificate of Need application was pending. The hearing panel also found that, by providing only the title and index pages of the Tri-Cities II complaint, Mr. Dunlap misled Judge Summers to believe that Tri-Cities II was the initial and the only federal action to consider when ruling on a stay of the administrative proceeding.

The hearing panel concluded that Mr. Dunlap also violated RPCs 3.3 and 8.4(c) by suggesting there were "no new developments" in Tri-Cities II in his response to Judge Summers' email of January 8, 2014. Mr. Dunlap failed to disclose that the United States District Court for the Middle District had transferred Tri-Cities II to the Eastern District of Tennessee and that on December 10, 2013, the Eastern District court had stayed discovery until the administrative appeal concluded.

The hearing panel determined that Mr. Dunlap's attempt to influence Judge Summers by threatening to sue her in federal court for refusing to grant the Certificate of Need without holding a hearing violated RPCs 3.5(a), 8.4(c), and 8.4(d). The panel noted the lack of any objectively reasonable basis for Mr. Dunlap to have called Judge Summers a "fixer" for HSDA and described Mr. Dunlap's actions as going "far beyond the use of forceful language." The hearing panel found Mr. Dunlap's conduct to be contempt for Judge Summers, the tribunal, and the administrative proceedings, in violation of RPC 8.4(d).

The hearing panel also found that Mr. Dunlap violated RPC 8.4(d) by impeding the resolution of the administrative appeal through duplicitous conduct that amounted to bullying and was prejudicial to the administration of justice. The hearing panel concluded that Mr. Dunlap was unapologetic and saw nothing improper in his conduct during the administrative appeal before Judge Summers.

In determining the appropriate sanction, the hearing panel considered these American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards): 5.11 and 5.13 (failure to maintain personal integrity in violation of a duty owed to the public), 6.11 and 6.12 (false statements, fraud, and misrepresentations in violation of a duty owed to the legal system), 6.21 and 6.22 (abuse of legal process in violation of a duty owed to the legal system), 6.31 and 6.32 (improper communications with individuals in the legal system), and 7.1 and 7.2 (violations of duties as a professional). The hearing panel found that three aggravating factors and one mitigating factor applied to Mr. Dunlap's misconduct under the ABA Standards. The hearing panel recommended that Mr. Dunlap be suspended for one year.

*Trial Court Review*

Mr. Dunlap sought review of the hearing panel's decision in the Davidson County Chancery Court (the trial court) under Tennessee Supreme Court Rule 9, section 33.1(a). He challenged the factual bases of several of the hearing panel's findings and conclusions, asserted that mitigating factors weighed against the imposition of discipline, contended that his conduct caused no material harm, and argued that the one-year suspension lacked proportionality.

The trial court affirmed the hearing panel's decision, finding that the evidence supported the hearing panel's conclusion that Mr. Dunlap violated RPCs 3.3, 3.5(a), 8.4(c), and 8.4(d) and that the hearing panel's decision was not arbitrary. The trial court ruled that the hearing panel applied the appropriate ABA Standards, including aggravating and mitigating factors, and that the recommended one-year suspension was "fair and proportionate." Mr. Dunlap appealed the trial court's judgment to this Court under Tennessee Supreme Court Rule 9, section 33.1(d).

## II.

### Analysis

*Standard of Review*

This Court has the inherent and undisputed power "to regulate and supervise the practice of law in Tennessee." *Hyman v. Bd. of Prof'l Responsibility*, 437 S.W.3d 435, 444 (Tenn. 2014) (citing *In re Burson*, 909 S.W.2d 768, 772–73 (Tenn. 1995)). We ensure that Tennessee's rules governing attorney conduct are applied in a manner that upholds "the integrity of the bar and the public trust in our system of justice." *Green v. Bd. of Prof'l Responsibility*, 567 S.W.3d 700, 713 (Tenn. 2019) (citing *Hughes v. Bd. of Prof'l Responsibility*, 259 S.W.3d 631, 647 (Tenn. 2008)). The Board derives its authority and functions from this Court. *Garland v. Bd. of Prof'l Responsibility*, 536 S.W.3d 811, 816 (Tenn. 2017) (citing *Brown v. Bd. of Prof'l Responsibility*, 29 S.W.3d 445, 449 (Tenn. 2000)). An attorney charged with disciplinary violations has the right to an evidentiary hearing before a hearing panel of the Board, which determines whether the attorney committed a violation and, if so, the appropriate sanction. *Bd. of Prof'l Responsibility v. Justice*, 577 S.W.3d 908, 923 (Tenn. 2019) (citing *Bd. of Prof'l Responsibility v. Daniel*, 549 S.W.3d 90, 99 (Tenn. 2018)).

The attorney or the Board may seek review of the hearing panel's decision in circuit or chancery court, which reviews the hearing panel's decision "on the transcript of the evidence before the hearing panel and its findings and judgment." Tenn. Sup. Ct. R. 9, § 33.1(b). The trial court may reverse or modify a hearing panel's decision only when the party that sought review was prejudiced because the hearing panel's findings, inferences, conclusions, or decisions were:

> (1) in violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

- 14 -

*Id.*; *Long v. Bd. of Prof'l Responsibility*, 435 S.W.3d 174, 178 (Tenn. 2014). We apply the same standard of review for a disciplinary decision as that applied by the trial court. *Bd. of Prof'l Responsibility v. Reguli*, 489 S.W.3d 408, 417 (Tenn. 2015) (citing *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 150 (Tenn. 2013)).

In disciplinary proceedings, this Court reviews questions of law de novo without a presumption of correctness. *Napolitano v. Bd. of Prof'l Responsibility*, 535 S.W.3d 481, 496 (Tenn. 2017) (citing *Reguli*, 489 S.W.3d at 417). To determine whether substantial and material evidence supports a hearing panel's decision, we evaluate "whether the evidence 'furnishes a reasonably sound factual basis for the decision being reviewed.'" *Sallee v. Bd. of Prof'l Responsibility*, 469 S.W.3d 18, 36 (Tenn. 2015) (quoting *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 612 (Tenn. 2010)). In evaluating the substantiality of the evidence, however, we do not substitute our judgment for that of the hearing panel about the weight of the evidence on questions of fact. *See* Tenn. Sup. Ct. R. 9, § 33.1(b). For that reason, "where reasonable minds can disagree over the propriety of a hearing panel's decision, we will uphold the ruling." *Bd. of Prof'l Responsibility v. Sheppard*, 556 S.W.3d 139, 146 (Tenn. 2018) (citing *Sallee*, 469 S.W.3d at 42). A hearing panel's decision is arbitrary or capricious when it "'is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.'" *Hughes*, 259 S.W.3d at 641 (quoting *City of Memphis v. Civ. Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007)). A hearing panel abuses its discretion when it applies "'an incorrect legal standard, or reach[es] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Reguli*, 489 S.W.3d at 418 (quoting *Sallee*, 469 S.W.3d at 42).

These principles guide our review of the issues raised by Mr. Dunlap challenging the hearing panel's findings of fact and conclusions of law.

*Failure to Disclose New Developments in Tri-Cities II*

Mr. Dunlap argues that the hearing panel erred in concluding that his reply to Judge Summers' January 8, 2014 email that there had been no new developments in the federal case was materially false. He insists his response was accurate and reasonable because the stay of discovery in Tri-Cities II was neither material nor relevant to the administrative appeal.

RPC 3.3 provides, "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal." Tenn. Sup. Ct. R. 8, RPC 3.3(a)(1). In some cases, "failure to make a disclosure is the equivalent of an affirmative misrepresentation." *Id.*, RPC 3.3 cmt. [3]; *see also In re Fee*, 898 P.2d 975, 976–78 (Ariz. 1995) (concluding that an

attorney's knowing failure to disclose to a judge the existence of a separate agreement under which counsel would get additional fees from the client's share of a settlement violated RPC 3.3); *In re Fisher*, 202 P.3d 1186, 1202 (Colo. 2009) (holding that under Colorado's RPC 3.3(a)(1), "failure to disclose material information to a tribunal is the equivalent of making a false statement of material fact"); *Office of Disciplinary Counsel v. Partington*, No. SCAD-11-0000162, 2011 WL 5517313, at \*1 (Haw. Nov. 9, 2011), *as corrected* (Dec. 8, 2011), *reinstatement granted*, No. SCAD-11-0000162, 2012 WL 681227 (Haw. Feb. 29, 2012) (concluding that an attorney's factual omissions in an appellate brief violated RPC 3.3(a)(1)).

While appealing the denial of the Certificate of Need through the state administrative process, Mr. Dunlap was also suing local and state officials in federal court to obtain the Certificate of Need without regard to the administrative process. Mr. Dunlap, however, was not honest with Judge Summers about the status of the federal case. He repeatedly argued to Judge Summers that she should stay the administrative appeal because the federal court case would likely take care of issues in the appeal. Yet by June 12, 2013, when the federal court dismissed Tri-Cities I, Mr. Dunlap was on notice that the case he had filed in federal court would not be dispositive of the administrative appeal. Even so, and without any factual basis, Mr. Dunlap continued to urge Judge Summers to hold the appeal in abeyance to await the federal court's ruling without disclosing to her the true status of the federal case.

Even after Mr. Dunlap filed Tri-Cities II and it was transferred back to the same district court that had dismissed Tri-Cities I, Mr. Dunlap continued to assert to Judge Summers that she should await the federal court ruling. In January 2014, when Judge Summers asked if there were any new developments to report, Mr. Dunlap responded there were none. This was not true because in December 2013, the magistrate judge had stayed discovery in Tri-Cities II to await the conclusion of the administrative appeal. The federal court's stay of discovery was material information because Judge Summers would have proceeded with the administrative appeal had she known of the magistrate judge's order staying discovery. Mr. Dunlap's false statement that there were no new developments to report and his failure to disclose the material developments delayed the resolution of the proceeding. We find that substantial and material evidence supports the hearing panel's conclusion that Mr. Dunlap violated RPC 3.3 by failing to disclose material information to Judge Summers.

Mr. Dunlap tries to deflect blame by pointing to HSDA's counsel's delay in informing Judge Summers about the stay of discovery in Tri-Cities II. Any delay by HSDA's counsel did not relieve Mr. Dunlap of his duty of candor under RPC 3.3 and did not indicate the information was immaterial. Mr. Dunlap's failure to disclose material information about the status of the federal case was an "affirmative misrepresentation."

*See* Tenn. Sup. Ct. R. 8, RPC 3.3 cmt. [3]. Moreover, Mr. Dunlap's varying explanations for his failure to disclose the stay of discovery undermine his "immateriality" argument. These explanations range from a misunderstanding that the Tennessee Attorney General's Office was advising Judge Summers on the federal court developments to his plan to discuss the topic during the conference call scheduled for January 10, 2014.

Substantial and material evidence also supports the hearing panel's decision that Mr. Dunlap's failure to disclose material information violated RPC 8.4(c), which provides that it is "professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Tenn. Sup. Ct. R. 8, RPC 8.4(c); *see also Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 851 (Tenn. 2009) (holding that attorney's accidental misrepresentations to the court violated RPCs 3.3(a) and 8.4(c) where attorney did not correct misrepresentations after brought to his attention). Under Rule 8.4(c), dishonesty "includes any conduct demonstrating a lack of fairness and straightforwardness or a lack of honesty, probity or integrity in principle. . . . A lawyer who breaches the duty of candor under Rule 3.3(a)(1) violates Rule 8.4(c), as well." Douglas R. Richmond, *Appellate Ethics: Truth, Criticism, and Consequences*, 23 Rev. Litig. 301, 306–08 (2004) (internal quotation marks omitted) (citations omitted). Mr. Dunlap failed to disclose to Judge Summers material facts from the federal litigation known to him as the attorney for Tri-Cities Holdings. In doing so, Mr. Dunlap violated his duty of candor to the tribunal and engaged in dishonest conduct.

*Need to Exhaust Administrative Remedies*
*Before Filing Tri-Cities II*

Mr. Dunlap contends that the hearing panel erred in sanctioning him based on his failure to exhaust state administrative remedies. Although the hearing panel's findings of fact referenced the federal court's dismissal of Tri-Cities I as not ripe for disposition, the hearing panel did not find that Mr. Dunlap violated any RPC by filing Tri-Cities II before exhausting administrative remedies. Rather, the findings of fact described separate instances in which Mr. Dunlap failed to disclose to Judge Summers that Tri-Cities I had been dismissed because the Certificate of Need application was pending. The hearing panel's conclusion that Mr. Dunlap violated RPCs 3.3 and 8.4(c) was based on his failure to disclose material facts about the federal litigation, not his filing of a second federal lawsuit. This issue lacks merit.

*Attempt to Influence Judge Summers by Threatening*
*to Sue Her in Federal Court*

Mr. Dunlap contends that the hearing panel erred in concluding that he tried to improperly influence Judge Summers by threatening to make her a defendant in a federal

lawsuit. Mr. Dunlap maintains that he did not attempt to threaten or coerce Judge Summers, only to advise her of possible liability for violating the ADA, and in doing so, Mr. Dunlap asserts he was acting within his rights as a zealous advocate.

RPC 3.5(a) provides that an attorney "shall not . . . seek to influence a judge, juror, prospective juror, or other official by means prohibited by law." Tenn. Sup. Ct. R. 8, RPC 3.5(a). Informing a judge that disciplinary or legal action will follow if the judge does not comply with a desired outcome constitutes a "veiled threat" in violation of RPC 3.5(a). *See In re Zeno*, 517 F. Supp. 2d 591, 592–95 (D.P.R. 2007), *aff'd*, 504 F.3d 64 (1st Cir. 2007) (concluding that attorney who "informed" a judge that a misconduct complaint would be filed unless the judge abandoned her request for more information regarding a petition violated Model Rule of Professional Conduct 3.5(a)).

Mr. Dunlap's statements to Judge Summers that she would become a defendant in a federal lawsuit and subject to a Department of Justice investigation if she set the administrative appeal for hearing were more than advisory. Coupled with his characterization that Judge Summers would be "aiding and abetting" and become a "fixer" for Johnson City and HSDA, Mr. Dunlap's statements can reasonably be viewed as threats made to secure a certain course of action. Mr. Dunlap wanted Judge Summers to reject HSDA's request to set the administrative appeal for hearing and at the same time grant a Certificate of Need without a hearing. Judge Summers testified that she understood from the statements that Mr. Dunlap would sue her if she "didn't do what he wanted [her] to do"; that is, "to just issue a [Certificate of Need] without a hearing." The hearing panel's conclusion that Mr. Dunlap sought to improperly influence Judge Summers by threatening her in violation of RPC 3.5(a) is supported by substantial and material evidence. We do not second-guess the hearing panel "'as to the weight of the evidence on questions of fact.'" *Meehan v. Bd. of Prof'l Responsibility*, 584 S.W.3d 403, 413 (Tenn. 2019) (quoting Tenn. Sup. Ct. R. 9, § 33.1(b)).

RPC 8.4(c) prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation. Tenn. Sup. Ct. R. 8, RPC 8.4(c). RPC 8.4(d) provides that a lawyer must not "engage in conduct that is prejudicial to the administration of justice." *Id.*, RPC 8.4(d). Mr. Dunlap's false statements to Judge Summers about the status of the federal litigation involved dishonesty and violated RPC 8.4(c). Mr. Dunlap's attempts to intimidate Judge Summers and to coerce her to delay the administrative appeal and grant his client a Certificate of Need without a hearing suggest a course of conduct that runs contrary to the judicial function of deciding issues impartially on their merits. Mr. Dunlap's attempt to coerce a desired outcome by threats violated RPC 8.4(d). *See Gardendance, Inc. v. Woodstock Copperworks, Ltd.*, No. 1:04CV10, 2006 WL 8447272, at *7 (M.D.N.C. Jan. 19, 2006) (finding that attorney violated RPC 8.4(d) by threatening to sue opposing counsel and opposing counsel's law firm in an effort to coerce them to

release him from his legal obligations); *Ligon v. Stilley*, 371 S.W.3d 615, 625, 668–70 (Ark. 2010) (concluding that attorney's statements to a judge that the attorney would "prefer" not to report to disciplinary or judicial authorities the judge's issuance of a sanction was an attempt to use criminal process and the disciplinary system to coerce a favorable result and was prejudicial to the administration of justice); *In re Small*, 294 P.3d 1165, 1181, 1191 (Kan. 2013) (concluding that attorney violated Kansas RPC 8.4(d) by stating in court filings that the court lacked impartiality, was prejudiced, and advocated on behalf of opposing parties). This issue lacks merit.

### *"No Good Faith Basis" to File Tri-Cities II in the Middle District of Tennessee*

Mr. Dunlap argues that the hearing panel erred in sanctioning him for filing Tri-Cities II in the United States District Court for the Middle District of Tennessee without a "good faith basis." Yet Mr. Dunlap admitted in his brief that the hearing panel "made no finding of misconduct by Mr. Dunlap filing *Tri-Cities II* in the Middle District of Tennessee." The hearing panel only quoted in one of its findings of fact the magistrate judge's statements that the filing of Tri-Cities II "manifested a contemptuous attitude toward this Court's earlier decision." This issue has no merit.

### *Failure to Disclose the Dismissal of Tri-Cities I to Judge Summers*

Mr. Dunlap contends that the hearing panel erred in concluding that he violated RPCs 3.3 and 8.4(c) by not disclosing to Judge Summers the filing and later dismissal of Tri-Cities I. He asserts that the dismissal of Tri-Cities I was not relevant to the administrative appeal, noting that HSDA's counsel also did not inform Judge Summers of the dismissal. He also contends that he disclosed the existence of Tri-Cities I to Judge Summers. Failure to disclose material information to a tribunal violates an attorney's duty of candor under RPC 3.3 and also constitutes dishonest conduct in violation of RPC 8.4(c).

The federal court's dismissal of Tri-Cities I was relevant and material information that Mr. Dunlap should have disclosed to Judge Summers in the multiple conference calls about the administrative appeal. Judge Summers testified that she would not have continued to stay the administrative appeal had she known that the federal court dismissed Tri-Cities I as not ripe for adjudication pending resolution of the administrative Certificate of Need process. Like the new developments in Tri-Cities II, the federal court's dismissal of Tri-Cities I was material to Judge Summers' decision to grant Mr. Dunlap's request to stay the administrative appeal.

Mr. Dunlap asserts that he disclosed the existence of Tri-Cities I in his motion for admission pro hac vice. An affidavit attached to his motion for admission listed both Tri-Cities I and Tri-Cities II as other cases in which he had sought admission pro hac vice. Judge Summers testified, however, that she had no way of knowing that any case listed in the affidavit would be the same as the federal litigation Mr. Dunlap kept referencing during conference calls. Mr. Dunlap also insisted that he disclosed Tri-Cities I in a July 29, 2013 letter to Judge Summers that included the Tri-Cities II complaint, which referenced Tri-Cities I. Yet Mr. Dunlap's letter only attached copies of the title and index pages of the Tri-Cities II complaint, none of which mentioned Tri-Cities I. The hearing panel concluded that Mr. Dunlap misled Judge Summers by attaching a partial complaint, suggesting that Tri-Cities II was the initial and only federal action to consider when ruling on Mr. Dunlap's request to stay the administrative appeal. Mr. Dunlap never disclosed that Tri-Cities I had been dismissed because his client's application for a Certificate of Need was pending. HSDA's counsel's failure to bring up the filing and later dismissal of Tri-Cities I neither relieved Mr. Dunlap of his personal duty to disclose material information to the tribunal under RPC 3.3 nor allowed Mr. Dunlap to transfer this duty to Judge Summers.

We find that substantial and material evidence supports the hearing panel's conclusion that Mr. Dunlap violated RPCs 3.3 and 8.4(c) by failing to disclose material information about Tri-Cities I.

*Misrepresentation About Request to Federal Court*
*to Stay the Administrative Appeal*

Mr. Dunlap disputes the hearing panel's conclusion that he violated RPCs 3.3 and 8.4(c) by misrepresenting to Judge Summers in two conference calls that he intended to ask the federal court to stay the administrative appeal. The hearing panel's conclusion, however, was related to Mr. Dunlap's failure to disclose the filing and dismissal of Tri-Cities I.[8]

Mr. Dunlap first argues that he made multiple requests to Judge Summers to stay the administrative appeal. This argument misses the mark because requests to Judge Summers to stay the administrative appeal were not requests for a stay to the federal

---

[8] The hearing panel stated:

> 9.    Mr. Dunlap violated his RPC 3.3 duty of candor to ALJ Summers and 8.4(c) . . . when he stated . . . that he intended to ask the federal court to stay the CON appeal case *without disclosing that the Tri-Cities I case had been filed and dismissed as not ripe for adjudication due to the need to exhaust the CON process*.

(Emphasis added).

court. Mr. Dunlap then references multiple motions he filed in federal court seeking "injunctive relief," which he claims could have stayed the administrative appeal. But by this time, the United States District Court for the Eastern District of Tennessee had already dismissed Tri-Cities I because of Tri-Cities Holdings' failure to complete the Certificate of Need administrative process. Mr. Dunlap's representation that he intended to ask the federal court to stay the administrative appeal runs contrary to the federal court's previous ruling on the issue. Ultimately, Mr. Dunlap did not produce a federal court filing that requested a stay of the administrative appeal. Thus, we conclude that substantial and material evidence supports the hearing panel's conclusion that Mr. Dunlap violated RPCs 3.3 and 8.4(c) by failing to disclose material information to Judge Summers.

*Characterization of the Administrative Appeal as a*
*"Scheme or Artifice" and of Judge Summers as a "Fixer"*

Mr. Dunlap challenges the hearing panel's conclusion that he acted improperly by characterizing the administrative appeal as a "scheme or artifice" and Judge Summers as a "fixer" for HSDA and Johnson City. He contends that he simply advised Judge Summers that HSDA was asking her to violate the ADA, that he had a reasonable basis to do so, and that his actions were well within his rights as an advocate.

In *Board of Professional Responsibility v. Parrish*, 556 S.W.3d 153 (Tenn. 2018), *cert. denied*, 139 S. Ct. 1216, 203 L. Ed. 2d 207 (2019), this Court addressed an attorney's pejorative statements directed toward three appellate judges. The attorney accused the judges of being "willing to abuse the power of [their] judicial office"; "turn[ing] a deaf ear fixated on making a result that satiates . . . sympathies"; and "doing what a bribe-taking judge would do to victimize a litigant who was targeted by a bribe." *Id.* 158–60. We determined that substantial and material evidence supported the hearing panel's conclusion that the attorney's pejorative statements violated RPC 8.4(d), among other ethical rules. *Id.* at 167.

By casting Judge Summers as a possible "fixer" that would be "aiding and abetting" opposing parties, Mr. Dunlap engaged in conduct prejudicial to the administration of justice, in violation of RPC 8.4(d). These characterizations signal a lack of trust in the ability of the tribunal to adjudicate matters impartially and in accordance with the law and tend to erode the public's confidence in the courts. We also agree with the hearing panel that Mr. Dunlap had no "objectively reasonable basis" to characterize Judge Summers in those terms. Likewise, Mr. Dunlap's description of the administrative appeal as a "scheme or artifice to violate the ADA," based on his opinion that the federal statute mandated his preferred outcome, was prejudicial to the administration of justice. Mr. Dunlap's statement evidenced a belief that the administrative structure was designed

to contravene rather than uphold legal rights. Mr. Dunlap admitted that he was aware of no legal authority supporting his position that the administrative appeal was unnecessary or violated federal law. His repeated references to his "studied opinion" about what the ADA required, with no legal support, did not justify his inappropriate comments.

Contrary to Mr. Dunlap's contention, this conduct goes "far beyond the use of forceful language" by a zealous advocate. His conduct breached his obligation "to demonstrate respect for the law and legal institutions." *See* Tenn. Sup. Ct. R. 8, RPC 8.4 cmt. [9]; *see also Lawyer Disciplinary Bd. v. Hall*, 765 S.E.2d 187, 199 (W. Va. 2014) (finding that attorney's inflammatory, unprofessional, and disrespectful comments about a judge, without an objectively reasonable basis, violated Rule 8.4(d)); *Bd. of Prof'l Responsibility v. Davidson*, 205 P.3d 1008, 1016 (Wyo. 2009) (concluding that baselessly impugning the integrity of a judge is prejudicial to the administration of justice). We find that substantial and material evidence supports the hearing panel's conclusion that Mr. Dunlap's unfounded and disparaging characterizations expressed contempt for Judge Summers and the tribunal.

*Appropriateness of Sanction*

Mr. Dunlap contends that the one-year suspension imposed by the hearing panel was disproportionate to the discipline imposed in other cases and that there was no evidence that his conduct caused material harm.

In determining the appropriate sanction for an attorney's misconduct, a hearing panel must consider the applicable ABA Standards. Tenn. Sup. Ct. R. 9, § 15.4(a). The hearing panel first identifies the presumptive sanction under the ABA Standards and then considers whether the presumptive sanction should be increased or decreased based on aggravating and mitigating factors. *Sheppard*, 556 S.W.3d at 147 (quoting *Bd. of Prof'l Responsibility v. Cowan*, 388 S.W.3d 264, 268 (Tenn. 2012)). If there are no aggravating or mitigating factors, the presumptive sanction applies. *Id.* (citing *Talley v. Bd. of Prof'l Responsibility*, 358 S.W.3d 185, 194 (Tenn. 2011)).

ABA Standards 6.12, 6.22, 6.32, and 7.2 listed by the hearing panel identified suspension as the presumptive sanction. The hearing panel did not specify which standards it relied on for the one-year suspension, but had the flexibility to identify multiple applicable ABA Standards and recommend a sanction within the presumptive sanctions identified in those standards. In *Board of Professional Responsibility v. Daniel*, this Court explained that when fact patterns do not place misconduct within a single ABA Standard, hearing panels "may identify all relevant ABA Standards and then determine a sanction within the range of the presumptive sanctions identified in the relevant ABA Standards." 549 S.W.3d at 102. As we have stated, "[t]he ABA Standards 'are not

designed to propose a specific sanction for each of the myriad of fact patterns in cases of lawyer misconduct,' and they are 'not analogous to criminal determinate sentences.'" *Maddux v. Bd. of Prof'l Responsibility*, 409 S.W.3d 613, 624 (Tenn. 2013) (quoting ABA Standards, Theoretical Framework). The hearing panel was at liberty to recommend a sanction for Mr. Dunlap from the range of presumptive sanctions under the applicable ABA Standards.

We find that the hearing panel's findings of fact and conclusions of law support suspension as the presumptive sanction under ABA Standards 6.12, 6.32, and 7.2. Mr. Dunlap's violation of RPCs 3.3 and 8.4(c) in failing to disclose material facts to Judge Summers falls under ABA Standard 6.12 (suspension is appropriate when an attorney "knows that false statements or documents are being submitted to the court or that material information is being improperly withheld"). Likewise, ABA Standard 6.32 (suspension is appropriate when an attorney knowingly engages in improper "communication with an individual in the legal system") applies based on Mr. Dunlap's violation of RPCs 3.5(a), 8.4(c), and 8.4(d) by threatening Judge Summers to coerce action favorable to his client. Last, Mr. Dunlap's disparaging descriptions of Judge Summers and the tribunal and the delay in resolution of the administrative appeal caused by his misconduct were prejudicial to the administration of justice, *see* RPC 8.4(d), and thus involve ABA Standard 7.2 (suspension is appropriate when an attorney knowingly engages in conduct that violates "a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system"). The hearing panel did not act arbitrarily or capriciously or abuse its discretion in recommending suspension because its decision reflects the presumptive sanction under several ABA Standards applicable to Mr. Dunlap's misconduct.

The hearing panel concluded that three aggravating factors—substantial experience in the practice of law, multiple offenses, and refusal to acknowledge wrongful nature of conduct—applied. Mr. Dunlap challenges the hearing panel's finding that he refused to acknowledge the wrongful nature of his conduct. He contends that he was and remains extremely apologetic for his actions. Mr. Dunlap relies on his statements during the disciplinary hearing that he regretted his conduct, that he may have been wrong, and that he could not "formally" admit fault because that would prejudice his client's rights in violation of his duty of loyalty. Mr. Dunlap also notes that he offered to write a letter of apology to Judge Summers.

Mr. Dunlap's statements during the disciplinary hearing that "I could be wrong," "maybe I'm wrong," or "if I have made a mistake" were at best equivocal and did not acknowledge wrongdoing or express remorse. Nor do they overcome his unambiguous statements and sustained refusal to admit fault in his conduct before Judge Summers.

At the disciplinary hearing, Mr. Dunlap did not accept that he had a duty under the RPCs to inform Judge Summers of the magistrate judge's order to stay discovery in Tri-Cities II. He stated that the "tone" he used with Judge Summers was appropriate, and he rejected the conclusions of Judge Summers, the chancery court, and the Court of Appeals that his conduct violated any RPC.[9] Mr. Dunlap declared, "I'm proud of the potential of this case and what I've done in this case."

Mr. Dunlap's offer to write an apology letter to Judge Summers during negotiations with the Board was conditioned on settling the disciplinary case without an admission of fault. Mr. Dunlap's "apology offer" conflicts with his assertion that an apology would prejudice his client in the federal litigation.

The hearing panel heard Mr. Dunlap's testimony and, despite his assertions to the contrary, determined that he was unapologetic. This Court defers to a hearing panel's determination of a witness's credibility. *See Reguli*, 489 S.W.3d at 421 (citing *Long*, 435 S.W.3d at 181). We find that substantial and material evidence supports the hearing panel's conclusion that Mr. Dunlap was not apologetic and did not acknowledge his conduct was wrong. *See Sallee*, 469 S.W.3d at 36 (quoting *Sneed*, 301 S.W.3d at 612) (stating that the evidence "furnishes a reasonably sound factual basis for the decision being reviewed"). Mr. Dunlap's refusal to acknowledge the wrongful nature of his conduct was properly considered as an aggravating factor in determining an appropriate sanction for his misconduct. *See* ABA Standards 9.22(g).

Mr. Dunlap contends that the hearing panel should have considered his efforts to bring relief to the opioid epidemic in Tennessee as a mitigating factor. The hearing panel correctly rejected this request. Mr. Dunlap's inappropriate handling of the administrative appeal, not its subject matter, resulted in the disciplinary action.

In sum, the aggravating factors outweigh the mitigating factors and support the hearing panel's decision.

Mr. Dunlap supports his argument that suspension is an improper sanction for his misconduct with a series of disciplinary matters that resulted in suspensions, listed by attorney name, date, and a brief parenthetical explanation of the attorney's misconduct. Mr. Dunlap asserts that these cases involved misconduct that was more serious than his conduct. Mr. Dunlap's brief also lists several disciplinary matters that resulted in public censures, contending that his conduct did not rise to the level of the misconduct in those cases. Mr. Dunlap failed to develop his argument with any analysis of the facts of the listed disciplinary matters or the application of the ABA Standards to his case. Moreover,

---

[9] During oral argument before this Court, Mr. Dunlap did not concede he had done anything wrong during the administrative appeal.

the sanctions in the listed cases were not appealed and reached this Court on the Board's petition to enforce the sanction recommended by the hearing panel. Thus, Mr. Dunlap's case is in a different procedural posture because he appealed the trial court's order affirming the hearing panel's recommendation. Applying our standard of review, we have concluded that suspension is supported by the hearing panel's findings of fact and conclusions of law based on multiple ABA Standards.

Mr. Dunlap also contends that the suspension recommended by the hearing panel is improper because there was no evidence of material harm. *See* ABA Standard 3.0 (listing "the potential or actual injury caused by the lawyer's misconduct" as a factor to consider in imposing a sanction). Under the ABA Standards, the consideration of harm or injury is included in each of the specific standards stating the presumptive sanction for a particular type of misconduct. *See, e.g.*, ABA Standard 6.12 ("Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and *causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding*." (emphasis added)); ABA Standard 6.32 ("Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and *causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding*." (emphasis added)).

Here, the hearing panel concluded that Mr. Dunlap's conduct "unnecessarily impeded a resolution of the [Certificate of Need] appeal . . . which was prejudicial to the administration of justice." This conclusion is supported by Judge Summers' testimony that she would have set the appeal for hearing within the statutory deadline of 180 days if not for Mr. Dunlap's misrepresentations and failure to disclose material information. Moreover, Mr. Dunlap's statements about Judge Summers becoming a "fixer" for and "aiding and abetting" opposing parties undermine trust in the impartiality of the administrative tribunal. Mr. Dunlap's interference with the regular operation of the administrative appeal process and the resulting delay, coupled with his disparaging remarks toward Judge Summers and the tribunal, are evidence of harm to the legal system.

Based on our review, we hold that the one-year suspension imposed by the hearing panel was appropriate. The hearing panel's decision was supported by substantial and material evidence and was neither arbitrary nor an abuse of discretion. Suspension was the presumptive sanction under the applicable ABA Standards and was supported by the balance of aggravating and mitigating factors.

## III.

## Conclusion

For the reasons stated herein, we affirm the trial court's judgment upholding the hearing panel's decision and tax the costs of this appeal to James A. Dunlap, Jr.

_____
SHARON G. LEE, JUSTICE